UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

RAY DEAN WEST,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

Case No. 3:17-cv-00368

Judge Eli J. Richardson
Magistrate Judge Alistair E. Newbern

### MEMORANDUM ORDER

In this medical malpractice action brought under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–2680, Plaintiff Ray Dean West seeks damages from the United States stemming from an infection he contracted during the course of a surgical procedure at the Nashville Veterans Administration Health Facility on May 18, 2015. (Doc. No. 1.) West has filed three motions that are now ripe for decision: a motion for mediation sanctions (Doc. No. 68); a motion to strike the depositions of Dr. Carl Capelouto and Dr. Muhammad Akmal and for assessment of costs (Doc. No. 73); and a motion to compel payment of expert fees (Doc. No. 112). The United States has responded in opposition to each of West's motions. (Doc. Nos. 71, 74, 117, 118, 119, 121, 123.) For the reasons that follow, West's motions will be denied.

**I.    Factual and Procedural Background**

    **A.    The October 9, 2019 Mediation and West's Motion for Sanctions**

West initiated this action on February 16, 2017, by filing a complaint under the FTCA in which he alleges "violations of the acceptable standard of professional practice by the physicians at the Veterans Administration Facility in Nashville, in the course of effecting a routine and generally safe prostate needle biopsy." (Doc. No. 1, PageID# 5–6.) On April 9, 2019, the Court

entered the parties' proposed revised case management order in which the parties agreed to "participate in mediation" and "file a report with the Court on the results of that mediation on or before October 1, 2019." (Doc. No. 35, PageID# 109.) After corresponding regarding the obligation to participate in mediation (Doc. No. 71), the parties filed a joint motion requesting "that the Court appoint a magistrate judge to serve as a mediator and schedule a mediation . . ." (Doc. No. 55, PageID# 521). The Court granted the motion, referred this action to Magistrate Judge Joe Brown to conduct a judicial settlement conference by October 11, 2019, and ordered the parties to "contact . . . Judge Brown's chambers at the earliest opportunity to set a date for the settlement conference." (Doc. No. 56, PageID# 524.)

Counsel for the United States emailed Judge Brown's chambers on September 10, 2019, "to schedule a mediation[,]" copying West's counsel and advising Judge Brown of the parties' availability. (Doc. No. 71, PageID# 599 ; Doc. No. 71-7.) A few days later, counsel for the United States reported to West's counsel that, "after consultation with those with settlement authority in the United States Attorney's Office, . . . the United States had no money to offer." (Doc. No. 71, PageID# 599.) Counsel for the United states "suggested taking the mediation off [the] calendar" and instead filing a joint mediation report to inform the Court that mediation would not be productive. (*Id.*; Doc. No. 71-8.) "Out of respect for . . . Judge Brown's schedule," counsel for the United States also contacted his chambers to inform him "that mediation likely would not occur." (Doc. No. 71, PageID# 600.) West's counsel responded "'that all cases may be settleable'" and asked opposing counsel not to "'unilaterally'" cancel the mediation. (*Id.* (quoting Doc. No. 71-8, PageID# 756).) The United States' counsel replied that the parties had "asked the court for mediation to comply with the scheduling order" but that mediation would be futile given the United States' unwillingness to make an offer to resolve the case. (*Id*. at PageID# 600.) Despite that

2

position, and out of respect for West's preference to proceed with mediation, counsel for the United States contacted Judge Brown's chambers to request that he hold October 9, 2019, for the conference. (Doc. Nos. 71, 71-9.)

On September 30, 2019, counsel for the United States informed West's counsel that the emails he had been sending to Judge Brown's chambers had been directed to an employee who no longer worked for the Court and Judge Brown had not received them. (Doc. Nos. 71, 71-13.) Counsel for the United States reiterated that, although he would not be making an offer and he viewed the mediation as a poor use of time, he would attend the mediation if West's counsel thought it would be helpful. (*Id.*)

On October 1, 2019, the Court noted that "the parties ha[d] not confirmed a date with Judge Brown or informed him that a [settlement] conference [was] no longer necessary" and ordered the parties to contact Judge Brown's chambers "to confirm a date for a judicial settlement conference or to relieve Judge Brown of this obligation." (Doc. No. 60.) In response to that order, counsel for the United States asked West's counsel if he "'would prefer to mediate or to notice the court that mediation is not appropriate at this time.'" (Doc. No. 71, PageID# 601 (quoting Doc. No. 71-14, PageID# 782).) West's counsel responded that he would "'defer to [the United States' preference] on that issue.'" (Doc. No. 71, PageID# 601 (quoting Doc. No. 71-15, PageID# 785).) Counsel for the United States concluded that it would "'not hurt for [the parties] to try and mediate" because "perhaps there is some progress [they could] make.'" (*Id.*) A settlement conference was scheduled for October 9, 2019. (Doc. No. 62.)

Among other things, Judge Brown's settlement conference order required each party "to be present with **full settlement authority**[;]" "exchange offers and demands **at least three working days prior to the** conference" if offers and demands had not previously been made; and

file a settlement statement two days prior to the conference providing a "bottom line[,]" meaning "the maximum amount [the United States] is willing to pay" and "the minimum amount [West] is willing to accept at the present time[.]" (Doc. No. 62, PageID# 547, 549 & n.3 (emphases in original).)

> The United States submitted a settlement statement that included the following language:
>
> [Counsel for the United States] has communicated to Plaintiff's counsel that he is not prepared to offer anything to settle the case . . . .
>
> . . . .
>
> From all the evidence available to the United States, Plaintiff simply does not have a case on liability. Defendant is also awaiting a ruling on its dispositive motion for judgment on the pleadings based on Plaintiff's jurisdictional failure that has at least an even chance of disposing of the case entirely. Therefore, the Department of Veterans Affairs has declined to authorize any money to settle the case at this time, even a nominal nuisance value. The United States believes that the mediation will be successful if Plaintiff and his attorney are able to hear the weaknesses in their case from a respected third party neutral so that they can give due consideration of their chances of prevailing at trial before investing more time and money into this case. And, if Plaintiff can present some evidence that will be admissible at trial which is not in the record and has not been rebutted above, the United States is willing to reconsider its position in good faith.

(Doc. No. 71, PageID# 602 (second and third alterations in original).) Judge Brown responded to the United States' statement in an email, inquiring as to why the parties had requested a settlement conference if the United States had "no authority to pay anything" and remarking that the conference would likely be "short . . . ." (Doc. No. 71-19, PageID# 799.) Counsel for the United States explained that the parties requested the settlement conference in order to comply with the Court's scheduling order requiring them to participate in mediation and that the United States had "communicated its settlement position to [West's] counsel, who still suggested having a mediation . . . while deferring to the United States' preference." (*Id.* at PageID# 798.) The United States reiterated that it was "open to seeking settlement authority if [West] can offer some factual support

for his lawsuit" and expressed hope that Judge Brown would "be in a better position to communicate the objective value of the case to [West] . . . ." (*Id.*) Judge Brown responded: "[w]e will see how it goes." (*Id.*) The settlement conference took place on October 9, 2019, and was unsuccessful. (Doc. No. 65.) Although West made an offer to settle the case, the United States did not. (Doc. Nos. 68, 71.) West and his wife traveled to Nashville from Lafayette, Tennessee, to participate in the mediation. (Doc. No. 68.)

West now seeks mediation sanctions under Federal Rule of Civil Procedure 16(f)(1)(B) and Local Rule 16.05(a), arguing that counsel for the United States failed to participate in the mediation in good faith and should be liable for West's attorney's fees and for the travel expenses and lost income associated with his and his wife's attendance at the mediation.[1] (*Id.*) West argues that he would not have moved for sanctions if counsel for the United States had "simply advised all parties involved (including the Judge) **even the afternoon before** that he would not offer a dollar in the case[.]" (*Id.* at PageID# 572 (emphasis in original).) The United States responded that sanctions are inappropriate because the United States' counsel made a good faith effort to comply with the Court's scheduling order, and, in fact, counsel had informed West and Judge Brown before the mediation that the United States would not be making an opening offer. (Doc. No. 71.)

### B. The Depositions of Dr. Capelouto and Dr. Akmal and West's Related Motions

Dr. Akmal and Dr. Capelouto and are West's proposed expert witnesses. (Doc. Nos. 47-1, 47-2, 73-1.) The United States noticed the deposition of Dr. Akmal for August 22, 2019, in Nashville, Tennessee, and the deposition of Dr. Capelouto for August 27, 2019, in Atlanta,

---

[1] West's motion refers to Local Rule 16.05(c). (Doc. No. 68.) However, because there is no such rule, the Court presumes that he intended to refer to Local Rule 16.05(a), which authorizes sanctions for "[f]ailure of the parties to comply with the required mediation procedures . . . ." M.D. Tenn. R. 16.05(a) (mediation procedures).

5
Case 3:17-cv-00368   Document 127   Filed 06/17/20   Page 5 of 14 PageID #: 2255

Georgia. (Doc. No. 117-1.) The depositions were delayed because the United States had argued in its motion for judgment on the pleadings that Dr. Akmal, as an employee of the federal government, was prohibited by civil and criminal statutes from offering testimony against the United States in this action. (Doc. Nos. 43, 73, 74.) Concerned about the United States' reference to Dr. Akmal's potential criminal liability, West moved to modify the scheduling order to allow Dr. Akmal to consult with an independent attorney before providing deposition testimony. (Doc. No. 53.) The Court granted that request in part, extending the deadline for expert depositions until October 25, 2019. (Doc. No. 56.)

Dr. Capelouto's deposition was ultimately held on October 16, 2019, and concluded without incident. (Doc. No. 71-1.) Dr. Akmal's deposition began on October 18, 2019, at West's counsel's office and was more eventful. (Doc. No. 71-2.) Initially, the deposition proceeded without any issues as counsel for the United States questioned Dr. Akmal regarding the relevant standard of care. (*Id.*) However, the situation became tense when counsel for the United States asked Dr. Akmal if he had consulted with an independent attorney regarding his potential liability for testifying against the United States as a federal employee. (*Id.*) Dr. Akmal explained that he is no longer a federal employee and that his curriculum vitae, which was appended to his expert report, showed otherwise because he had failed to update it. (*Id.*) When counsel for the United States pressed Dr. Akmal on the tension between that statement and the representation, in his expert report, that his CV was current, West's counsel interjected: "His affidavit states he was previously at the [Veteran's Administration]. Could you please clarify, for purposes of your question, when you ask him if it's correct or incorrect, does he include his affidavit, or does he exclude his affidavit? If you clarify that, I'll hold my objection." (*Id.* at PageID# 685:1–7.) Counsel for the United States responded by requesting that West's counsel "refrain from speaking

objections" and instead "[s]tate the basis [of any objection] and a brief statement." (*Id.* at PageID# 685:22–23.)

Soon thereafter, West's counsel interjected again: "I object to your demeanor. You adjust your demeanor. I am not going to tolerate sarcasm and huffing. It's not showing up on this record. Treat [Dr. Akmal] with respect, or we will end this deposition." (*Id.* at PageID# 711:12–16.) Counsel for the United States asked West's counsel to either end the deposition or stop interrupting. (Doc. No. 71-2.) West's counsel began to question Dr. Akmal, asking him if he felt like counsel for the United States was treating him with respect. (*Id.*) Counsel for the United States objected that he was not done questioning Dr. Akmal, to which West's counsel responded: "Leave if you want to. I'm going to ask questions, and [the stenographer is] going to take it down." (*Id.* at PageID# 712:19–21.) Counsel for the United States replied: "Tell me when you're done." (*Id.* at PageID# 712:22.) West's counsel then said the following:

> You have been abusing him from the minute you walked in here.
> You don't know how to do a deposition . . . . You don't know how to do a deposition. You must treat people with respect. You have been abrasive and sarcastic to me from the beginning of our dealings. There is a difference between being aggressive and being abrasive, and you don't know that difference.
> So you -- if you want to end this deposition, we'll take it up with the judge. I think I'm going to file a bar complaint against you. I am finished with your demeanor. I'm finished with your sarcasm. I'm finished with your patent demonstrable false representations to the Court. And I'm seriously debating what are my obligations.
> So if you want to -- you and I have a problem. And if that's affecting this case, you need to go get another lawyer in it, or I need to get another lawyer for Mr. West. It's affecting this case. You took me to Atlanta and subjected me to two and a half hours of foolish testimony, where you didn't know how to ask the doctor if he was familiar with the standard of acceptable care. I'm going to file a motion for sanctions on that. So you and I obviously have a problem.
> And you are absolutely mistreating this witness here. And if you want to treat him respectfully, go on. If you don't, let's end the deposition, and I'll put my questions on the record. End of statement.
> And don't give me that ridiculous sarcastic look that you've been giving him the entire day. I'm not going to tolerate it. Leave. This is my office. If you're

7

going to behave with that outrageous behavior, leave. And I want this on the record, for the bar.

(*Id.* at PageID# 712:23–714:14.)

After counsel for the United States asked if West's counsel wanted him to leave, West's counsel responded: "I don't care whether you leave or continue. If you're going to stay here, you're going to treat him with respect, and you're going to treat me with respect." (*Id.* at PageID# 714:17–20.) West's counsel later added, "[y]ou're one of the worst lawyers I've ever encountered. I've been at this 40 years. I'm an AV-rated attorney. You're one of the technically most incompetent attorneys, and demeanorwise [*sic*], one of the most inappropriate attorneys I've ever dealt with." (*Id.* at PageID# 716:3–8.) Upon Dr. Akmal's request, the parties took a break from the deposition, during which counsel for the United States called his office to determine how to proceed. (Doc. No. 71-2.)

After the recess ended, counsel for the United States made a statement describing West's counsel's conduct as the "most abusive" he had ever seen in a deposition and disputing the claim that he had mistreated Dr. Akmal. (*Id.* at PageID# 717:9.) Counsel for the United States then attempted to adjourn the deposition because he had "been ordered by [West's counsel] to leave the deposition" and because the parties "need[ed] the court's intervention to be able to [complete] it." (*Id.* at PageID# 718:13–14, 18–19.) West's counsel sought to resume the deposition, but it ended when counsel for the United States dismissed the stenographer, concluding that he could not "stay . . . and endure this treatment." (*Id.* at PageID# 721:2–3.)

On October 29, 2019, West filed a motion to strike the deposition testimony of Dr. Capelouto and Dr. Akmal from any use in this proceeding and for assessment of the costs of the depositions against the United States. (Doc. No. 73.) West argues that none of Dr. Capelouto's testimony is admissible in this proceeding because "no questions to, or answers from,

Dr. Capelouto were couched in terms of 'reasonable medical certainty.'" (*Id.* at PageID# 812, ¶ 5.) With respect to Dr. Akmal, "who had never participated in a deposition," West asserts that the doctor "was visibly shaken, as much from [defense counsel's] mocking and contemptuous demeanor as the continued odd discussion about potential 'criminal' charges resulting from his role as an expert witness for [West]." (*Id.* at PageID# 811, ¶ 4.) In Dr. Akmal's affidavit, which West filed in support of his motion, Dr. Akmal states that, "[a]lthough it may not be shown clearly in his words when transcribed, [counsel for the United States] behaved . . . in a very unprofessional manner" and his "voice was sarcastic and condescending . . . " (Doc. No. 73-1, PageID# 815, ¶ 4.) West argues that Federal Rules of Civil Procedure 11 and 37(d)(3) support the sanctions of striking the doctors' depositions and assessment of costs against the United States. (Doc. No. 73.)

The United States responded in opposition to West's motion. (Doc. No. 74.) Among other things, the United States argues that neither Rule 11 nor Rule 37(d)(3) applies to the doctors' depositions and therefore cannot support the relief that West requests. (*Id.*) Further, the United States points out that it has cited the deposition of Dr. Capelouto and Dr. Akmal in support of its pending motion for summary judgment. (*Id.*; Doc. Nos. 101, 101-8, 101-10, 101-14.)

Rather than respond to the United States' arguments in a reply brief, West filed another motion requesting that the Court assess the costs of the doctors' depositions against the United States, this time citing Federal Rule of Civil Procedure 26(b). (Doc. No. 112.) In an affidavit filed in support of the motion, West asserts that he "submitted to the [United States] the itemized billing for each deposition, requesting $2,000.00 for Dr. Capelouto's actual deposition time in Atlanta on October 16, 2019 (toward a $6,000.00 total bill), and Dr. Akmal's actual deposition time ($1,000.00) in Murfreesboro on October 18, 2019." (Doc. No. 112-1, PageID# 2068, ¶ 2.)

9

The United States again responded in opposition, arguing that West's "[c]ounsel should not be permitted to evict opposing counsel from his office in the middle of a deposition, and then expect payment for the eviction." (Doc. No. 117, PageID# 2156.) The United States also argues that, in the Middle District of Tennessee, it is customary for each party in litigation to bear the bulk of their own expert costs. (Doc. No. 117.) The United States requests that, if the Court assesses any deposition costs against it, West "should be required to produce an invoice of costs incurred, which he incorrectly represented has already occurred." (*Id.* at PageID# 2156.) West filed a reply brief in which he repeats his request for relief and does not respond to the United States' request for an itemization of deposition costs. (Doc. No. 118.)

### C. Tennessee Board of Professional Responsibility Complaint

On February 7, 2020, the United States filed a notice of supplemental authority to inform the Court that West's counsel had filed a complaint with the Tennessee Board of Professional Responsibility (the Board) against counsel for the United States, "alleging that counsel had issued a threat of criminal prosecution against Dr. Akmal and did not attend a mediation on October 9, 2019 in good faith." (Doc. No. 119, PageID# 2215.) The notice informed the Court that the Board had dismissed the complaint in a letter dated January 7, 2020, which the United States appended to the notice, and that West's counsel had not timely appealed the dismissal. (Doc. Nos. 119, 119-1.) The United States argues "that the Board's dismissal of [West's] counsel's complaint may be instructive to this Court because it addresses the same allegations underlying [West's] motions for sanctions and costs." (*Id.* at PageID# 2216.)

West responded to the United States' notice of supplemental authority, arguing that the Board's decision is not relevant to any of the issues before the Court and that the United States had violated the Board's rules by filing the Board's confidential dismissal letter in in this action.

(Doc. No. 121.) The United States filed a reply, arguing that West has misconstrued the relevant Board rules. (Doc. No. 123.)

Because the Court can resolve the pending motions without reference to the Board's dismissal letter, that letter is not considered in the analysis that follows.

**II.     Analysis**

    **A.     West's Motion for Mediation Sanctions**

Rule 16(f) provides that, "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney . . . is substantially unprepared to participate—or does not participate in good faith—in [a pretrial] conference[.]" Fed. R. Civ. P. 16(f)(1)(B). Further, "[i]nstead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses— including attorney's fees—incurred because of any noncompliance with this rule . . . ." Fed. R. Civ. P. 16(f)(2). Under Local Rule 16.05(a), any "mediation shall be conducted according to procedures directed by the mediator, or as directed by order of the Court[,]" and the Court may sanction the parties for failure to comply with those procedures. M.D. Tenn. R. 16.05(a) (mediation procedures).

West's motion for an order requiring the United States to pay his attorney's fees relating to the mediation and Mrs. West's travel expenses and lost income is without merit. West argues that the United States did not participate in the mediation in good faith because it did not notify either West or the Court the day prior to the mediation that it would not be making a settlement offer. However, as the United States argues, the email correspondence between counsel for the parties shows that the United States repeatedly communicated its position to West's counsel before the mediation, and the United States' settlement conference statement conveyed the same position to Judge Brown. The Court cannot find, based on the record before it, that the United States'

conduct during or leading up to the mediation amounted to bad faith. West's motion for mediation sanctions will therefore be denied.

B. **West's Deposition-Related Motions**

West has not adequately supported his request that the Court strike the depositions of Dr. Capelouto and Dr. Akmal from any use in this proceeding. Rule 30 covers depositions by oral examination and provides that "[a]n objection . . . to the manner of taking the deposition . . . must be stated concisely in a nonargumentative and nonsuggestive manner." Fed. R. Civ. P. 30(c)(2). Further, "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A). Upon the deponent's request, the deposition must be suspended pending a ruling on the motion. Fed. R. Civ. P. 30(d)(3)(B). Finally, "[t]he court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).

Rather than follow Rule 30's procedures for challenges to opposing counsel's deposition conduct, West filed a motion to strike the doctors' deposition testimony under Rules 11 and 37(d).[2] Yet, as the United States argues, those rules are inapplicable to the oral deposition of expert

---

[2] West cites various cases to support his claim that Dr. Capelouto's testimony is not admissible as "substantive proof or on any issue of medical causation" because it was not "couched in terms of 'reasonable medical certainty.'" (Doc. No. 73, PageID# 812, ¶¶ 5, 6.) But the question of the admissibility of Dr. Capelouto's testimony is separate from the question of whether it should be stricken as a sanction for the United States' deposition conduct and only the second question is properly before the Court. Because West moved to strike Dr. Capelouto's testimony from any use in this proceeding, the United States has filed a motion for summary judgment that relies on that testimony. (Doc. Nos. 101, 101-8, 101-10.) Notably, in responding in opposition to the United States' motion for summary judgment, West does not argue that Dr. Capelouto's deposition testimony is inadmissible and, instead, relies on that testimony to rebut the United States' arguments. (Doc. Nos. 110, 111.)

witnesses like the doctors. Rule 11 governs sanctions for misrepresentations to the Court in written filings, and Rule 37(d) concerns the failure of a party to attend its own deposition or answer certain discovery requests. *See* Fed. R. Civ. P. 11, 37(d). West's motion to strike will be denied.

West has also failed to adequately support his request that the Court assess the cost of the doctors' depositions against the United States. West rightly points out that, "[u]nless manifest injustice would result, the court must require that the party seeking discovery . . . pay [an] expert [witness] a reasonable fee for time spent in responding to discovery . . . ." Fed. R. Civ. P. 26(b)(4)(E)(i). The United States argues that it would be manifestly unjust to require it to pay for the doctors' depositions given West's counsel's conduct during Dr. Akmal's deposition and its assertion that the custom in this District is that each side largely bears its own expert witness costs.

The Court need not decide at this juncture whether requiring the United States to pay for the doctors' depositions would result in manifest injustice, a term that is not well defined in this Circuit. *See Brown v. Tax Ease Lien Servicing, LLC*, 776 F. App'x 291, 304 (6th Cir. 2019) (explaining that the Sixth Circuit "has little caselaw on Rule 26(b)(4)(E) or its predecessor (Rule 26(b)(4)(C)) . . ."). That is because West has not shown that the fees he requests to compensate his expert witnesses—$2,000.00 for Dr. Capelouto and $1,000.00 for Dr. Akmal—are "reasonable" within the meaning of Rule 26(b)(4)(E). Fed. R. Civ. P. 26(b)(4)(E). Courts determining the reasonableness of a fee request may consider "the education and experience of the expert, the prevailing rates for similar experts, as well as the complexity of the information sought." *Cent. Transp., LLC v. Thermofluid Techs., Inc.*, No. 3:18-CV-80, 2020 WL 50393, at *14 (E.D. Tenn. Jan. 3, 2020) (quoting *Bonar v. Romano*, No. 2:08-CV-560, 2010 WL 4280691, at *1 (S.D. Ohio Oct. 25, 2010)). West has not provided any of that information in support of his motion, nor has he responded to the United States' argument that he should provide the Court with an

itemization of his fee request. His motion for assessment of deposition costs against the United States will be denied without prejudice to refiling at the conclusion of this litigation.

### III. Conclusion

For the foregoing reasons, West's motion for mediation sanctions (Doc. No. 68); his motion to strike the deposition testimony of Dr. Capelouto and Dr. West and for assessment of costs (Doc. No. 73); and his motion to compel payment of expert fees (Doc. No. 112) are DENIED. West may refile a motion seeking assessment of expert deposition fees against the United States under Rule 26(b)(4)(E) at the conclusion of this litigation if warranted.

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge