IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

RAY DEAN WEST,                                  )
                                                )
      Plaintiff,                          )
                                                )           NO. 3:17-cv-00368
v.                                              )           JUDGE RICHARDSON
                                                )
UNITED STATES OF AMERICA,                       )
                                                )
      Defendant.                          )

## MEMORANDUM OPINION

Pending before the Court, among other things,[1] are Plaintiff's Motion to Strike Defendant's Expert Disclosures and Exclude Testimony (Doc. No. 40) and Defendant's Motion to Exclude Plaintiff's Experts (Doc. No. 84). The parties have filed opposition briefs (Doc. Nos. 48 and 108), a reply (Doc. No. 114), a notice of supplemental authority (Doc. No. 120), and a response to the notice of supplemental authority (Doc. No. 122).

## BACKGROUND[2]

This action was brought by Plaintiff pursuant to the Federal Tort Claims Act ("FTCA"), based on allegations against a federal agency, the Department of Veterans Affairs ("VA"), for alleged medical malpractice occurring at the Nashville Veterans Administration Hospital ("NVAH"). Plaintiff asserts that he has received medical care through the NVAH since 2008. Among the services periodically provided by the NVAH for Plaintiff was a procedure described

---

[1] Defendant's Motion for Judgment on the Pleadings (Doc. No. 41) and the parties' cross-motions for summary judgment (Doc. Nos. 78 and 89) will be addressed by a separate Memorandum Opinion and Order.

[2] Unless otherwise noted, these facts are taken from the Complaint (Doc. No. 1).

as a "transrectal needle biopsy" or "transrectal ultrasound biopsy" ("TRUS biopsy") of his prostate. Plaintiff underwent this procedure at the NVAH in 2011 and 2013, and both tests proved to be negative for cancer. Following an elevated PSA (protein specific antigen) reading in the spring of 2015, Plaintiff's primary care physician at NVAH[3] recommended another TRUS biopsy of the prostate, and the procedure was scheduled for May 18, 2015, with physicians at the NVAH.

Plaintiff alleges that as part of his previous TRUS biopsy procedures (in 2011 and 2013), he was prescribed a prophylactic series of antibiotics in the two-to-three-day period preceding the biopsy and for the two-to-three-day period after the procedure. This was due to the fact that the biopsy procedure involved passage of a needle through an area of the body at high risk for bacterial infection. He contends that in 2015, the VA physicians made no mention of any pre-procedure antibiotic regimen and, when specifically questioned about this by Plaintiff and his wife, advised that there was "no need" for that antibiotic regimen.

The Complaint alleges that on the day of the 2015 procedure, Plaintiff was administered an antibiotic only at the conclusion[4] of his TRUS biopsy ("the subject biopsy"). Plaintiff avers that within several hours of the procedure, he became extremely sick and was taken to the emergency room at Macon County General Hospital, near his home, where testing revealed a "rampant general infection in the area of his prostate and groin." Plaintiff asserts that for approximately six months

---

[3] Plaintiff testified that this doctor was his primary care physician, Dr. Shields (Doc. No. 81-1 at 3), but Defendant claims it was a urologist, Dr. Kappa (Doc. No. 104 at ¶ 5). The records filed by Plaintiff at Doc. No. 110-1 indicate that he saw Drs. See and Shields, primary care physicians, on the same day he saw the urologist, Dr. Kappa. (Doc. No. 101-4 at 142-145). In any event, no one denies that all of these doctors were NVAH employees.

[4] Defendant disputes this fact and asserts that the antibiotic Rocephin was administered prior to the procedure. *See, e.g.,* Smith Report (Doc. No. 40-2) at n. 9. Plaintiff now acknowledges that he was administered 1 gm of Rocephin before the procedure (Doc. No. 110 at 9; Doc. No. 111 at ¶ 81), but he maintains that it was administered, at best, just minutes before the needle penetration, which was not sufficient. (*Id.*).

following the subject biopsy, he experienced "excruciating, unrelenting and disabling pain in the area of his groin and testicles" and ultimately had to have a testicle removed.

Plaintiff asserts claims against Defendant, pursuant to Tennessee's HealthCare Liability Act ("THLA"), for violations of the acceptable standard of professional practice by the physicians at the NVAH because of their failure to prescribe pre-procedure and post-procedure prophylactic antibiotics in connection with the subject biopsy. Plaintiff specifically notes the failure of the physicians at NVAH to properly consider Plaintiff's other medical issues at the time, including a cardiac condition and advanced diabetes that caused him to be immuno-suppressed or immune-compromised; their failure to perform a pre-procedure rectal swab to identify bacteria in Plaintiff's colon; and their failure to consider an alternative procedure in light of his pre-existing medical conditions.

## TENNESSEE HEALTHCARE LIABILITY ACT

Because the extent of the United States' liability under the FTCA is determined by reference to applicable state law,[5] *Brown v. United States*, 583 F.3d 916, 919-20 (6th Cir. 2009), "federal law incorporates state substantive law for the purposes of FTCA claims." *Brusch v. United States*, No. 19-cv-00415, 2019 WL 5261105, at *2 (M.D. Tenn. Oct. 17, 2019) (quoting *Eiswert v. United States*, 322 F. Supp. 3d 864, 877 (E.D. Tenn. 2018)). And, in a civil case, state law governs a witness's competency regarding a claim or defense for which state law supplies the rule of decision. Fed. R. Evid. 601. This applies not only to lay witnesses but also to expert witnesses. *Peppers v. Washington Cty., Tennessee*, No. 2:13-CV-180, 2015 WL 13404333, at *1 (E.D. Tenn. Oct. 8, 2015) ("Fed. R. Evid. 601 requires the Court to look to state law to determine the

---

[5] The FTCA provides that the United States may be liable for medical malpractice "if a private person would be liable to the plaintiff in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

competency of expert witnesses where 'State law supplies the rule of decision' in the underlying case." (quoting *Bock v. Univ. of Tennessee Med. Grp., Inc.*, 471 F. App'x. 459, 461 (6th Cir. 2012) ["*Bock I*"]).

<u>Tenn. Code Ann. § 29-26-115(a)</u>

In a health care liability action under the THLA, the claimant must prove three elements: (1) the recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred; (2) that the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with that standard; and (3) as a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred. Tenn. Code Ann. § 29-26-115(a). Thus, a plaintiff must establish the standard of acceptable care, a breach of that standard, and injury proximately caused by that breach.

In determining whether an expert witness may testify as to the elements of the claim prescribed by subsection (a) of Tenn. Code Ann. § 29–26–115, the court must consider what has come to be known as the "locality rule," found in subsection (a)(1), whereby a "medical expert relied upon by the plaintiff must have knowledge of the standard of professional care in the defendant's applicable community or knowledge of the standard of professional care in a community that is shown to be similar to the defendant's community." *Robinson v. LeCorps,* 83 S.W.3d 718, 724 (Tenn. 2002) (emphasis omitted), *cited in Donathan v. Orthopaedic & Sports Med. Clinic, PLLC*, No. 4:07-CV-18, 2009 WL 3584263, at *24 (E.D. Tenn. Oct. 26, 2009). The standard of professional care must be based upon "the community in which the defendant practices

or a similar community." *Robinson*, 83 S.W.3d at 723.[6] The expert witness must be sufficiently familiar with the standard of care of the profession or specialty and be able to give relevant testimony on the issue in question. *Bock I*, 471 F. App'x at 462.

Case law has shaped the contours of the "locality rule." A medical expert used to establish the recognized standard of acceptable professional practice in the community in which the defendant practices or in a similar community must demonstrate some familiarity with that medical community in order for the expert's testimony to be admissible under the rules of evidence. *Shipley v. Williams*, 350 S.W.3d 527, 554 (Tenn. 2011).[7] The expert must present facts demonstrating *how* she has knowledge of the applicable standard of professional care either in the community in which the defendant physician practices or in a similar community. *Donathan*, 2009 WL 3584263, at *24. For instance, the expert must go further than simply asserting that she is familiar with the applicable standard of care. *Id.* She must indicate the basis for her familiarity. *Stanfield v. Neblett,* 339 S.W.3d 22, 32 (Tenn. Ct. App. 2010). As the Tennessee Court of Appeals explained in *Kenyon v. Handal,* 122 S.W.3d 743, 761–62 (Tenn. Ct. App. 2003), however, the expert is not required to be familiar with *all* the medical practices of the community where the physician practices. *Id.*

---

[6] The familiarity requirement and the similarity requirement are separate, alternative approaches to proving the acceptable standard of care. *See McDaniel*, 2018 WL 795506, at *5. An expert witness may show either that she is "familiar" with the relevant medical community or that she is familiar with a "similar" medical community.

[7] Although *Shipley* dealt with the Tennessee Rules of Evidence (not the Federal Rules of Evidence as applicable here), Tenn. R. Evid. 702's requirements are very similar to Fed. R. Evid. 702. The Tennessee rule provides: "If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Tenn. R. Evid. 702. Thus, the Court deems *Shipley* as persuasive authority on the point for which it is cited here.

Neither must the medical expert demonstrate "first-hand" or "direct" knowledge of the medical community and the appropriate standard of medical care there. *Shipley*, 350 S.W.3d at 554.

For the purpose of Tenn. Code Ann. § 29–26–115(a), the only relevant "community" is the community in which the defendant physician actually practices or a similar community. *Donathan*, 2009 WL 3584263, at *24 (citing *Howell v. Baptist Hosp.,* No. M2001-02388-COA-R3-CV, 2003 WL 112762, at *8 (Tenn. Ct. App. Jan. 14, 2003) (holding that an affiant's assertion of familiarity with the applicable standard of professional practice in "Middle Tennessee" did not provide a basis for testifying regarding the standard of professional practice in Nashville)).

"The claimant in most medical negligence cases must provide expert testimony to establish the required elements of subsection (a)." *Shipley v. Williams*, 350 S.W.3d 527, 550 (Tenn. 2011); *Young v. Frist Cardiology, PLLC,* 599 S.W.3d 568, 571 (Tenn. 2020). "A plaintiff must present competent opinion evidence establishing each of the three elements set forth in Tenn. Code Ann. § 29-26-115(a)." *Brown v. United States*, 355 F. App'x. 901, 906 (6th Cir. 2009).[8]

Tenn. Code Ann. § 29-26-115(b)

Subsections (a) and (b) of Tenn. Code Ann. § 29-26-115 serve two distinct purposes. Subsection (a) provides the elements that must be proven and subsection (b) prescribes who is "competent" to testify to satisfy the requirements of subsection (a). *Shipley*, 350 S.W.3d at 550. Subsection (b) sets forth the three requirements for an expert witness to be competent to testify in a medical negligence case: (1) being "licensed to practice, in Tennessee or a contiguous bordering state" (2) a "profession or specialty which would make the person's expert testimony relevant to the issues in the case" and (3) having "practiced this profession or specialty in one . . . of these

---

[8] As explained below, the plaintiff must also show that the expert witness meets the requirements of Fed. R. Evid. 702.

states during the year preceding the date that the alleged injury or wrongful act occurred." *Shipley*, 350 S.W.3d at 550. The Tennessee Supreme Court held that when determining whether a witness is competent to testify under the THLA, the court should look to subsection (b), not subsection (a). *Id*. Put another way, an expert witness must be "competent" under (b) to testify as to the elements in (a).

But competency is only part of the equation; a competent expert witness must also be *qualified* to testify,[9] *Bock I*, 471 F. App'x at 463, and his testimony must be *admissible*. Whether a competent expert witness is qualified, and whether his expert testimony is *admissible,* are determined based upon the rules of evidence (as opposed to Tenn. Code Ann. § 29-26-115). *Shipley*, 350 S.W.3d at 550-51. "A trial court should admit the testimony of a competent expert unless the party opposing the expert's testimony shows that it will not substantially assist the trier of fact or if the facts or data on which the opinion is based are not trustworthy. . . ." *Id.* at 551. In federal court, wherein the Federal Rules of Evidence naturally are applicable, the requirements of the THLA (specifically Section 29-26-115) combine with the requirement of Fed. R. Evid. 702 ("Rule 702") that expert testimony must "help the trier of fact." *McDaniel v. UT Med. Group, Inc.*, 16-cv-2895-TMP, 2018 WL 795506, at *3 (W.D. Tenn. Feb. 8, 2018).

The Sixth Circuit uses a two-step inquiry to resolve the seeming tension in cases involving Tenn. Code Ann. § 29–26–115(b) and Rule 702: first, the court looks to witness competency under § 29–26–115(b), a consideration "intimately intertwined with the substantive law." *Darling v. United States*, No. 2:15-cv-02429-STA-cgc, 2016 WL 4544541, at *4 (W.D. Tenn. Aug. 31, 2016).

---

[9] It may initially seem incongruous to say that someone is *competent*, but not *qualified*, to testify as an expert, but as discussed below, applicable law makes this possible. That is to say, among other things, that the distinction between being competent and being qualified can be, in this context, a distinction with a difference.

The two are intertwined, apparently, in the sense that the question is whether the witness is competent (under Tenn. Code Ann. § 29–26–115(b)) to testify as to matters relevant under the substantive law set forth in Tenn. Code Ann. § 29–26–115(a)—including matters governed by the locality rule. Second, the court looks to the witness's "qualifications" under Rule 702.[10] *Id.* Therefore, any expert offering an opinion on a Tennessee medical malpractice claim must satisfy the Tennessee competency requirement described in Tenn. Code Ann. § 29-26-115(b)[11] and also satisfy the Fed. R. Evid. 702 requirements.[12] *Legg v. Chopra*, 286 F.3d 286, 292 (6th Cir. 2002). Thus, if a witness is deemed competent (under subsection (b)) to testify to the substantive issues (under subsection (a)) in the case, such as the standard of care, then his or her testimony should be screened under Rule 702 to determine whether it is otherwise admissible expert testimony. "We therefore find no conflict between Tenn. Code Ann. § 29–26–115(b) and Fed. R. Evid. 702, since the first is directed at establishing the substantive issue in the case, and the second is a gatekeeping measure designed to ensure 'fairness in administration' of the case." *Id.* ; *see also Bock I*, 471 F. App'x at 461-62 (applying this analysis in considering Tenn. Code Ann. § 29-26-115(b)).

Under Rule 702, a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by

_____

[10] Rule 702 requires more than "qualifications." Rule 702 states that a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

[11] As suggested elsewhere herein, this "competency" required under Tenn. Code Ann. § 29-26-115(b) is competency to testify concerning the elements of a medical malpractice claim, which are set forth in Tenn. Code Ann. § 29-26-115(a).

[12] Of course, all evidence must also meet the requirements of relevancy under Fed. R. Civ. P. 401.

"knowledge, skill, experience, training, or education." Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Third, the testimony must be reliable. *In re Scrap Metal Antitrust Litig*., 527 F.3d 517, 528–29 (6th Cir. 2008).

It is these requirements of § 29-26-115(a) and (b) that form the bases for the parties' challenges to each other's expert witnesses. Once the minimum requirements are met, any questions the trial court may have about the *extent* of the expert witness's knowledge, skill, experience, training, or education pertain only to the weight of the testimony, not to its admissibility. *Shipley,* 350 S.W.3d at 551.

<u>PLAINTIFF'S MOTION</u>

Plaintiff asks the Court to exclude each of Defendants' three medical expert witnesses for failure to meet the requirements of the THLA. He contends that Dr. Gabriel Fiscus, the physician who performed the subject biopsy, has "no idea" about the acceptable standard of professional practice in the Nashville medical community. Plaintiff argues that Dr. Angela Smith, Defendant's retained witness, practices in North Carolina and has not provided even a minimal factual basis for showing that she knows anything about the relevant professional practice in the Nashville medical community. Finally, Plaintiff argues that Dr. Kirk Keegan has admitted that he was not in active practice in Nashville or a comparable community during the year preceding the relevant date of May 18, 2015. The Court will address these three witnesses in turn.

A. <u>Initial issue regarding the locality rule</u>

Defendant argues that the "locality rule" [Tenn. Code Ann. § 29-26-115(a)(1)] does not apply to a defendant's experts, but it has acknowledged that *Carpenter v. Klepper*, 205 S.W.3d 474 (Tenn. Ct. App. 2006) requires both a plaintiff's and a defendant's experts to comply with the

locality rule.[13] "The burden of the party offering testimony is the same under the similar locality rule regardless of whether the witness is offered by the plaintiff or the defendant." *Carpenter*, 205 S.W.3d at 483. Moreover, the burden of satisfying the locality rule falls on the party who proffers the witness. *Jenkins v. Marvel*, No. 4:08-CV-75, 2010 WL 5184884, at *3 (E.D. Tenn. Dec. 15, 2010).

Recognizing that there is debate as to whether the "similar locality" rule should still exist at all for THLA cases,[14] the Court will follow *Carpenter* and *Jenkins* and consider the locality rule as to each expert, with the burden of satisfying that rule falling on the party who proffered the witness.

B. Dr. Fiscus

Plaintiff argues that Dr. Fiscus has no basis to testify about the standard of care in facilities other than the NVAH. Thus, Plaintiff challenges Dr. Fiscus' ability, under Fed. R. Evid. 702, to opine as to the acceptable standard of care in the Nashville medical community in which Defendant

---

[13] "The United States acknowledges that the *Carpenter* decision requires both a plaintiff's and a defendant's experts to comply with the locality rule. *Carpenter v. Klepper*, 205 S.W.3d 474, 483 (Tenn. Ct. App. 2006)." (Doc. No. 114 at 4).

[14] "The legislatively mandated 'similar locality rule' has long since outlived its usefulness. It developed as an improvement over the 'strict locality rule' which was grounded in the manifest inequality existing in remote history between physicians practicing in large urban centers and those practicing in remote rural areas. Rapid advances in medical education, means of communication, and both invasive and diagnostic technology have rendered the 'similar locality rule' of today as obsolete as the 'strict locality rule,' which it legislatively supplanted in 1975." *Carpenter*, 205 S.W.3d at 484 (citation omitted). "There is no basis in logic or reason why the testimony of both Dr. Aaron and Dr. DeMaria is not admissible into evidence in this case. We are, however, powerless to do anything other than to engage in the tedious exercise of hair-splitting manifested . . . in this case . . .. We can only once again follow the lead of the Supreme Court of Tennessee in *Robinson* [v. *LeCorps*]*, 83 S.W.3d [718] at 723–24 [(Tenn. 2002)], and implore the Legislature to relegate the 'similar locality rule' to the 'ash heap' of history." *Id.*, *cited in Shipley*, 350 S.W.3d at 546-47.

practices, under Tenn. Code Ann. § 29-26-115(a). Plaintiff contends that Dr. Fiscus is not familiar with the acceptable standard of care in the relevant medical community.

Defendant has responded that it intends to offer Dr. Fiscus not as an expert witness but rather as a *fact* witness, as Plaintiff's treating physician. Defendant has represented that "Dr. Fiscus is not an expert witness attempting to establish evidence of the standard of care." (Doc. No. 48 at 4). Plaintiff has admitted that Dr. Fiscus, as a treating doctor, can certainly describe "what he did." (Doc. No. 40 at 9).

As a treating physician, Dr. Fiscus may testify within the scope of his expertise as a urologist, without being characterized as an "expert," if he testifies about observations based on personal knowledge as to his care and treatment of Plaintiff. *Hawkins v. Graceland*, 210 F.R.D. 210, 211 (W.D. Tenn. 2002). However, "when the doctor's opinion testimony extends beyond the facts disclosed during the care and treatment of the patient and the doctor is specially retained to develop opinion testimony, he or she is subject to the [Rule 26 disclosure requirements]." *Id.*; *see also In re Aredia and Zometa Products Liability Litigation,* 754 F. Supp. 2d 934, 936-37 (M.D. Tenn. 2010). A treating physician may testify within the scope of his expertise as to the plaintiff's various medical diagnoses, his stated histories and complaints, and his treatment. *Johnson v. Electrolux Home Products, Inc.* No. 2:09-CV-142, 2011 WL 5517228, at * 2-3 (E.D. Tenn. Aug. 25, 2011).

Thus, it appears that Plaintiff's motion to exclude Dr. Fiscus as an expert witness is moot. Dr. Fiscus may testify as a *fact* witness, as to what he did—i.e., how he performed the TRUS biopsy on Plaintiff—and the facts surrounding that procedure. But he may not offer expert testimony as to the appropriate standard of care in this case.

C. <u>Dr. Keegan</u>

Plaintiff also challenges Dr. Keegan's ability to opine about the local standard of care, arguing that Dr. Keegan has established no facts to show that he practiced in the Nashville area in the year preceding May 2015. Thus, Plaintiff attacks the competency of Dr. Keegan under the part of subsection (b) that requires the witness to have practiced the profession or specialty in Tennessee or a contiguous bordering state during the year preceding the date of the alleged injury or wrongful act. Tenn. Code Ann. § 29-26-115(b).

Indeed, Dr. Keegan's curriculum vitae reflects that, although he has been licensed in Tennessee since 2010, from February 2014 through July of 2015, he was an assistant professor at the F. Edward Hebert School of Medicine in San Antonio, Texas, and from July 2012 through July 2015, he was a member of the clinical staff at Wilford Hall Ambulatory Surgery Center and Brook Army Medical Center in San Antonio, Texas. (Doc. No. 40-3 at 6). In other words, Dr. Keegan came to Vanderbilt *after* Plaintiff underwent the subject biopsy.

Defendant posits that, like Dr. Fiscus, Dr. Keegan is not being offered as an expert but, rather, is a mere fact witness only as to the "protocol" for the subject biopsy at Nashville-area hospitals.[15] Defendant states that Keegan does not (and, the Court assumes, will not) opine on the quality or adequacy of these methods or protocols, so the requirements of the statute do not apply

---

[15] The Court notes that testimony about the protocols for TRUS biopsies could require "scientific, technical, or other specialized knowledge" within the scope of Rule 702 and, therefore, Dr. Keegan's "lay" testimony could be prohibited under Fed. R. Evid. 701. Courts have on occasion allowed witnesses to apply specialized knowledge while giving "lay" testimony, such as doctors testifying as fact witnesses that a person was cancer-free based on firsthand observations. *See, e.g., United States v. Ganier*, 468 F.3d 920, 926 (6th Cir. 2006) (citing *United States v. Wells*, 211 F.3d 988, 997–98 (6th Cir.2000)). However, the 2000 amendment to Federal Rule of Evidence 701 clarified that lay opinions or inferences cannot be based on "scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Because Dr. Keegan's testimony is otherwise excludable as irrelevant, the Court need not decide whether it falls within the scope of Rule 702.

to him. If Dr. Keegan is offered to testify about *facts*, however, Defendant has not shown how Keegan's testimony would be relevant under Fed. R. Evid. 401,[16] which is required for the admission of evidence. Dr. Keegan testified, as the *current* Chief of Urology and Assistant Chief of Surgery at the Tennessee Valley Health System ("TVHS"), which includes the NVAMC (Nashville VA Medical Center), and Assistant Professor of Urology at Vanderbilt University Medical Center ("VUMC"). (Doc. No. 40-3 at ¶ 2). He testified that he was aware of the standard of practice for TRUS biopsies both locally and nationally and that the TVHS and VUMC use the same protocol for TRUS biopsies. (*Id.* at ¶¶ 4-5). However, Dr. Keegan has not shown that or how he has first-hand knowledge of the methods or protocols in Nashville in May 2015, which is the relevant time period. (Doc. No. 40-3 at 4).

Defendant has not shown how testimony about methods and protocols in the TVHS and VUMC *today* (or at the time of his Affidavit) will make a fact more or less probable as it relates to the methods, protocols, or standard of care *in 2015*, which is what is at issue here. Neither has Defendant shown that the facts testified to by Dr. Keegan (as they existed at the time of his Affidavit in June of 2019) are of consequence in determining the issues surrounding the standard of care in Nashville in May of 2015. That being so, his testimony is not admissible under Fed. R. Evid. 401. In addition, the Court finds that any such fact testimony from Dr. Keegan would be more prejudicial than probative under Fed. R. Evid. 403, its probative value being outweighed by the danger of confusing the issues, misleading the jury or wasting time. Fed. R. Evid. 403.

---

[16] Rule 401 provides that evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401.

Therefore, Dr. Keegan's testimony is excluded pursuant to Fed. R. Evid. 401 and 403, and the Court need not address Plaintiff's claim that Dr. Keegan does not meet the requirements of Fed. R. Evid. 702 or Defendant's claim that Dr. Keegan is not subject to Rule 702.

D. Dr. Smith

Plaintiff contends that Dr. Smith cannot meet the mandatory competency requirements of the THLA because she has offered no facts to qualify her to opine on the standard of care in the Nashville medical community; in other words, she has not met the "locality" requirement of the statute.[17] Plaintiff is actually asserting that Dr. Smith does not meet the requirements of Fed. R. Evid. 702 to present expert testimony as to the first required element of Plaintiff's THLA claim, because she has not shown that she is familiar with the relevant medical community.

Dr. Smith stated in her expert report that she "reviewed the affidavit of Dr. Kirk Keegan regarding the NVAMC standard practice for a TRUS biopsy."[18] (Doc. No. 40-2 at 3). Defendant argues that Dr. Smith relied upon the testimony of Dr. Keegan concerning *his* (Dr. Keegan's) first-

---

[17] Plaintiff also argues that Dr. Smith has not expressed her opinions based upon a standard of "reasonable medical certainty." The Court disagrees. Dr. Smith expressly states at the beginning of her expert report: "Unless otherwise stated, I have arrived at my conclusions with a reasonable degree of medical certainty based on the facts and evidence known to me at the time of writing this report." (Doc. No. 40-2 at 1). In addition, she repeats the words "reasonable degree of medical certainty" throughout her opinions. (Doc. No. 40-2).

[18] The Court notes that review of the standards at merely one hospital does not support a sufficient understanding of the standards in the relevant medical *community*. Plaintiff must show that the defendant failed to act with ordinary and reasonable care when compared to the customs or practices of physicians from *a particular geographic region*, namely, the community in which the defendant practices or in a similar community. *Akers v. Heritage Med. Assocs., P.C.*, No. M2017-02470-COA-R3-CV, 2019 WL 104130, at *5 (Tenn. Ct. App. Jan. 4, 2019); *Sutphin v. Platt*, 720 S.W.2d 455, 457 (Tenn. 1986). Dr. Keegan testified about the standard protocols throughout the Tennessee Valley Health System (which includes the NVAMC) and at Vanderbilt University Medical Center and demonstrated a sufficient understanding of protocols in the Nashville medical community, and the Court assumes that Dr. Smith reviewed all of Dr. Keegan's Affidavit. Dr. Keegan's understanding, however, as noted above, is not relevant to the appropriate time period.

hand knowledge of the standard practices regarding TRUS biopsies at the NVAMC. (Doc. No. 48 at 5). Defendant notes that Dr. Keegan "is aware of the standard of practice for TRUS biopsies both locally and nationally." (*Id.*) Defendant claims that Dr. Smith, thus, "availed herself of exactly one of the avenues of familiarization [with the relevant medical community] that *Shipley* identifies as sufficient." (Doc. No. 48 at 14). As indicated above, however, the basis for Dr. Smith's "familiarization" is not reliable; it has little or nothing to do with the relevant medical community as of the relevant time. Dr. Keegan has not shown that he actually *has* first-hand knowledge of the practices employed in the Nashville medical community in May 2015.

An expert may become qualified as familiar with the relevant medical community under the THLA by educating herself by various means on the characteristics of that Tennessee medical community. *Shipley,* 350 S.W.3d at 552. Those means include, but are not limited to, reading reference materials on pertinent statistical information such as community and/or hospital size and the number and type of medical facilities in the area, conversing with other medical providers in the pertinent community or a neighboring or similar one, visiting the community or hospital where the defendant practices, or other means. *Id*. at 553. As Defendant points out in arguing to exclude Plaintiff's experts (Doc. No. 87 at 4):

> Generally a competent expert's testimony that he or she has reviewed and is familiar with pertinent statistical information such as community size, hospital size, the number and type of medical facilities in the community, and medical services or specialized practices available in the area; has had discussions with other medical providers in the pertinent community or a neighboring one regarding the applicable standard of care relevant to the issues presented; or has visited the community or hospital where the defendant practices, will be sufficient to establish the expert's testimony as admissible.

*McDaniel*, 2018 WL 795506, at *4 (citing *Shipley*, 350 S.W. 3d at 554). Dr. Smith has not shown that she has done any of these things. An expert need not be able to recite all of the medical statistics of a community, but having a complete lack of knowledge concerning a community's

medical resources would be inconsistent with having knowledge of the required standard of care. *Stanfield,* 339 S.W.3d at 33. A reasonable basis for an expert's knowledge of the medical community in question could consist of information such as the size, location and presence of teaching hospitals in the community. *Id.* Dr. Smith's report fails to mention any of this information about the Nashville medical community.[19]

As she discloses in her expert report, (Doc. No. 49-4 at 5), Dr. Smith relied upon the affidavit of Dr. Keegan "regarding the NVAMC standard practice for a TRUS biopsy." But Dr. Keegan's affidavit does not form a basis for Dr. Smith to testify about the "acceptable professional practice" in the Nashville medical community in May 2015. In other words, Dr. Smith relied upon information about the wrong time—a time irrelevant for purposes of satisfying the locality rule. *See* Tenn. Code Ann. 29-26-115(a)(1) (requiring the plaintiff to prove the "recognized standard of acceptable professional practice . . . in the community in which the defendant practices or in a similar community *at the time the alleged injury or wrongful action occurred*) (emphasis added). Despite her other qualifications, Dr. Smith has not identified reliable evidence upon which to base her familiarity with the Nashville medical community in 2015, so her testimony will not "assist the trier of fact to understand the evidence or to determine a fact in issue" under Rule 702 .[20]

---

[19] Defendant argues that Plaintiff could have tested Dr. Smith's familiarity with the local standard of care at any time but chose not to depose her. It is not Plaintiff's burden, however, to show that Dr. Smith is familiar with the Nashville medical community; that is Defendant's burden.

[20] Plaintiff also argues that Dr. Smith did not show that "she was engaged in any active clinical practice" during the full year preceding May 2015. (Doc. No. 40 at 11-12). The rule does not require that the medical expert be engaged in an "active clinical practice." The rule states that the witness must show that she "had practiced" the profession or specialty during the preceding year. Tenn. Code Ann. § 29-26-115(b). Dr. Smith stated that she had practiced urology in Chapel Hill, North Carolina since 2012, not including time spent *practicing* during her training and supervision. (Doc. No. 49-4 at 5). Her curriculum vitae reflects that from 2012-2014, having already received her M.D., she was pursuing a Master of Science in Clinical Research at the University of North Carolina and from 2012-2018, she was an Assistant Professor at the UNC Medical School. (*Id.* at

Defendant argues that in her affidavit, Dr. Smith "could have stated [merely] that she spoke with a local Nashville physician regarding standard practices for a TRUS biopsy in Nashville and is therefore familiar with the standard of care." (Doc. No. 48 at 14). If she had, Defendant argues, she would have satisfied the locality requirement. Why then, Defendant argues, does she not satisfy the locality requirement by reviewing Dr. Keegan's affidavit, which is actually a better method from Plaintiff's perspective, since that affidavit has been produced in discovery and provides Plaintiff more insight than a mere reference to a conversation with another physician? (Doc. No. 48 at 14-15). Defendant ignores the obvious answer: whatever else Dr. Smith could have done to satisfy the locality rule with respect to a 2015 TRUS biopsy, she does *not* satisfy it by learning about standard practices for a TRUS biopsy *as they existed at the time Dr. Keegan's affidavit was executed in June 2019*, which is all Dr. Keegan's affidavit has to offer.

Dr. Smith testified that she also consulted a variety of medical journals and articles relevant to the treatment Plaintiff received. (Doc. No. 40-2 at 4). She does not explain, however, how (if at all) those medical journals and articles gave her a familiarity with the relevant standard of care *in the Nashville medical community in May 2015*. Moreover, Dr. Smith has also not offered a factual basis to demonstrate that the Nashville medical community is similar to the North Carolina medical community in which she practices. For these reasons, Defendant has failed to show that Dr. Smith is familiar with the standard of care in the relevant medical community or a similar community, as required by the THLA.[21]

---

16). Dr. Smith has sufficiently shown that she practiced her profession during the relevant time period.

[21] Dr. Smith filed two Supplemental Affidavits (Doc. Nos. 49-6 and 104-2) addressing her perceived deficiencies in the opinions of Dr. Capelouto, but nothing in those Supplemental Affidavits establishes a basis for her familiarity with the Nashville medical community in May 2015.

Dr. Smith relies on the Best Practice Policy Statement of the American Urological Association and other treatises, studies, and materials that may qualify her to testify about a broader or national standard of care. But that still does not provide a basis for her to testify about the Nashville medical community specifically. An opinion witness may not base her testimony solely on her familiarity with a national, regional or statewide standard of professional practice. *Brown v. United States*, 355 F. App'x. 901, 905 (6th Cir. 2009) (collecting cases). "While an opinion witness's discussion of a broader standard of care does not require exclusion of the testimony, it may not substitute for evidence that establishes the locality requirement." *Id.*; *see also Shipley*, 350 S.W.3d at 553. Only after a medical expert witness has sufficiently established her familiarity with the standard of care in the same or similar community as the defendant's may she testify that there is a national standard of medical care to which members of her profession and/or specialty must adhere. *Id*. Thus, "an expert may not rely solely on a bare assertion of the existence of an applicable national standard of care in order for [her] proffered testimony to be admissible under [Tennessee] Rules of Evidence 702 and 703." *Id*. at 553-54.

For these reasons, the Court finds that Defendant has failed to show that Dr. Smith's testimony is reliable or would be helpful to the trier of fact as required by Fed. R. Evid. 702, and she may not testify as an expert witness in this case.

E. Conclusion

Accordingly, Plaintiff's Motion will be granted in part and denied in part. Defendant may offer the testimony of Dr. Fiscus as to factual matters surrounding the procedure he performed on Plaintiff in May 2015. Dr. Fiscus may not offer any expert opinion concerning the appropriate standard of care in the Nashville area medical community. Dr. Keegan's and Dr. Smith's testimony will be excluded.

Defendant asks the Court to exclude Plaintiff's two experts, Dr. Akmal and Dr. Capelouto, arguing that both physicians are not qualified under the THLA to testify in this case and, therefore, not competent expert witnesses pursuant to Fed. R. Evid. 601 and 702. (Doc. No. 84 at 2). As indicated in a footnote below, Defendant is confusing the standards. There is a difference between the competency of a witness to testify under Fed. R. Evid. 601 [as well as Tenn. Code Ann. § 29-26-115(b)] and the qualifications of a witness to testify as an expert under Fed. R. Evid. 702.

A. Dr. Akmal

Dr. Muhammad Akmal is a physician licensed in Tennessee and Georgia and board-certified in internal medicine. (Doc. No. 47-1). He has practiced medicine in the Middle Tennessee medical community (including Murfreesboro and Nashville) for the past twenty years. Dr. Akmal provided the Affidavit to support Plaintiff's Certificate of Good Faith (Doc. No. 2)[23] and is also offered as an expert on issues of liability.

Defendant objects to Dr. Akmal because he is not a urologist and therefore, according to Defendant, cannot provide expert testimony about the biopsy procedure at issue in this case. (Doc. No. 87). It is not clear whether Defendant is challenging Dr. Akmal's *qualifications* (under Fed.

---

[22] Defendant filed a Notice of Non-Opposition to Motion to Exclude Plaintiff's Experts (Doc. No. 106), arguing that Plaintiff's response to Defendant's Motion was not timely filed. Plaintiff filed, the next day, a response to Defendant's Notice (Doc. No. 107) and a response to Defendant's Motion to Exclude Plaintiff's Experts (Doc. No. 108). In light of the voluminous filings in this matter and the overlapping issues and filings related to the cross-motions for summary judgment, Defendant's argument concerning timeliness is not well-taken.

[23] The THLA requires that a plaintiff file, with his complaint, a certificate of good faith indicating that he or his counsel has consulted with one or more experts who have confirmed (in a written statement) that they are competent to express an opinion under the THLA and that they believe there is a good faith basis to maintain the THLA action. Tenn. Code Ann. § 29-26-122.

R. Evid. 702) to testify as to the recognized standard of case in the relevant medical community, pursuant to Tenn. Code Ann. § 29-26-115(a), or challenging Dr. Akmal's *competency* (under Tenn. Code Ann. § 29-26-115(b)) to testify, based on a particular profession or specialty that would make his testimony relevant to the issues herein, or both.[24] The two overlap, and the Court will address them together.

Plaintiff argues that Defendant is attempting improperly to limit the issue in this case to a *surgical* or *urological* issue and contends that Dr. Akmal can opine about the *actual* issue in this case, which is whether proper actions were taken *in preparation for* Plaintiff's (otherwise properly performed) biopsy.[25] Plaintiff asserts that it is not the actual biopsy at issue but, rather, whether the VA physicians properly considered Plaintiff's overall medical condition before the decision was made about how the biopsy would occur and whether a different prophylactic regimen of

_____

[24] Defendant argues that "Dr. Akmal has no experience in the applicable specialty and so is not *qualified* under the THLA to testify in this case, and therefore is not a *competent* expert pursuant to Rules 601 and 702 of the Federal Rules of Evidence." (Doc. No. 84 at 2) (emphasis added). Defendant thus suggests that: (1) whether an expert has experience in the applicable specialty relates to whether the expert is "qualified under the THLA"; (2) if an expert is not "qualified" under the THLA, then he is necessarily is not competent; and (3) not only Fed. R. Evid. 601, but also Fed. R. Evid. 702, deal with competency.

Defendant is confusing the standards here. Each of Defendant's three suggestions is off-base, respectively, because: (1) (a) Fed. R. Evid. 702, and not the THLA, governs whether an expert is *qualified* to testify in this case, and (b) whether an expert has experience in the applicable specialty relates not to whether the expert is qualified to testify but instead to whether the expert is competent under Tenn. Code Ann. § 29-26-115(b) (and thus under Fed. R. Evid. 601) to testify as to the elements of the THLA claim set forth in Tenn. Code Ann. § 29-26-115(a); (2) if an expert is not *qualified* to testify, that does not necessarily mean that the expert is not *competent* to testify; and (3) Fed. R. Evid. 702 deals with an expert's qualification to testify, not the expert's competency to testify.

[25] Plaintiff has stated that "the central issue in the case is whether Mr. West received [a] proper antibiotic regimen in advance of the 'transrectal biopsy' procedure." (Doc. No. 72 at 1). Plaintiff argues that resolution of that antibiotic issue requires consideration of a patient's individual, overall medical condition—in this case, advanced diabetes, which is not, standing alone, a "urological" medical issue. (*Id.*)

antibiotics should have been used. (Doc. No. 108). The Complaint alleges: "Within the meaning of T.C.A. § 29-26-115, the failure to prescribe pre-procedure and post-procedure prophylactic antibiotics is a breach of the acceptable standard of professional practice." (Doc. No. 1 at 6). In other words, Plaintiff asserts that the medical issue is not a surgical, urological issue but an issue related to diabetes management and the proper administration of antibiotics to avoid infection, and that Dr. Akmal is qualified to testify about that medical issue. (*Id.*)

As for Dr. Akmal's competency, the THLA requires that, to be competent, a licensed medical expert witness must practice a *relevant profession or specialty*. Tenn. Code Ann. § 29-26-115(b); *Bock v. UT Medical Gp., Inc.*, 546 F. App'x at 561 (6th Cir. 2013) ["*Bock II*"]; *see also* Fed. R. Evid. 702.[26] To clear this hurdle, the expert need not practice the same specialty as the defendant, but he still must practice in a profession or specialty that would make his expert testimony relevant to the issues in the case. *Bock II*, 546 F. App'x at 561-562 (citing *Searle v. Bryant*, 713 S.W.2d 62, 65 (Tenn. 1986)). Moreover, an expert witness may not simply testify as to a general standard of care expected of all physicians; rather, he must be sufficiently familiar with the standard of care of the particular profession or specialty and be able to give relevant testimony on the issue in question. *Id.* at 562. The statute requires the proffered expert to have a sufficient basis on which to establish familiarity with the defendant's field of practice[27] and the standard of care required in dealing with the medical care at issue. *Akers v. Heritage Med. Assocs., P.C.*, No. M2017-02470-COA-R3-CV, 2019 WL 104130, at *5 (Tenn. Ct. App. Jan. 4, 2019).

---

[26] As noted above, the expert witness must present testimony that is reliable and will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. Of course, Fed. R. Evid. 401 requires that such evidence also be *relevant*.

[27] Here, based on Plaintiff's theories, the "defendant's field of practice" includes more than Dr. Fiscus' practice of urological surgery and extends to other VA physicians involved in Plaintiff's care during the time surrounding the subject biopsy.

In *Searle*, the Tennessee Supreme Court held that the statute (Tenn. Code Ann. § 29-26-115(b)) contains no requirement that the witness practice in the same specialty as the defendant. *Searle*, 713 S.W.2d at 65, *cited in Gaasch v. Stoev*, No. 2:09-cv-02270-JPM-dkv, 2011 WL 13269777, at *2 (W.D. Tenn. Dec. 21, 2011). The witness in *Searle*, although not a surgeon, testified that he was familiar with the applicable standards of surgeons in the prevention and treatment of surgical wound infections. *Searle*, 713 S.W.2d at 65. The issue in *Searle* was "whether the defendant's performance in attempting to prevent the surgical wound infection and in treating it after it developed was negligent." *Id.* The court found that the expert witness's testimony, therefore, was relevant to the issues in the case and that he was competent to testify as to the standards in light of his familiarity with the applicable standards in the prevention and treatment of surgical wound infections, even though he was not himself a surgeon. *Id.*

In *Bock II*, on the other hand, the Sixth Circuit affirmed the district court's exclusion of the testimony of a general practitioner concerning the applicable standard of care in recommending or performing a chemoembolization and radiofrequency ablation for liver cancer. The court there found that the physician's testimony was not relevant—thus rendering the physician not competent under § 29-26-115—because he lacked expertise on those two complex medical procedures. *Bock II,* 546 F. App'x at 562. In addition, the court found that the physician's testimony about post-surgical care in the hospital setting was not relevant, since, in addition to not having expertise in the specific procedures, he had not provided post-surgical care in a hospital setting in more than four years. *Id.* at 562-63.

Here, Dr. Akmal is not offering opinions as to the performance of the medical procedure (TRUS biopsy) itself. Unlike the physician in *Bock*, he does not opine that the physician breached the appropriate standard of care in the actual performance of a complicated medical procedure. His

opinions have to do with the appropriate evaluation of risks and provision of antibiotics to an "advanced immune-suppressed diabetic" patient before and after such a procedure in order to protect that patient from the types of infection that ultimately resulted in this case. Plaintiff contends that the entire process, both before and after the procedure, was mismanaged by the VA physicians.

Dr. Akmal has opined that with a known diabetic patient who is considered immune-suppressed, the VA doctors should have administered antibiotics in the days preceding and following the subject biopsy. (Doc. No. 47-1 at 6). "That insures that the antibiotic is fully present in the patient's blood stream and minimizes (although it certainly does not guarantee) the development of any severe infection." (*Id.*). Dr. Akmal testified that although there are differences of opinion as to the length of time pre- and post-procedure antibiotics should be given to a patient like Plaintiff, it is not reasonable to omit all prophylaxis antibiotic treatment except for the minimal, single injection given to Plaintiff. (*Id.* at 7-8).[28]

Dr. Akmal opines that (1) the VA physicians significantly breached the local standard of acceptable professional practice by failing to take the elementary and simple steps previously taken by VA doctors in earlier prostate biopsies for Plaintiff—pre-procedure and post-procedure administration of appropriate antibiotics and (2) considering Plaintiff's general medical history, the VA physicians breached the acceptable standard of professional care by their failure to conduct a simple intestinal tract evaluation (rectal swab) to determine whether Plaintiff exhibited signs of the more virulent forms of E coli, which would have confirmed the need for pre-procedure prophylaxis efforts. (Doc. No. 47-1 at 8-9).

_____

[28] The fact that other experts, including Plaintiff's urological expert, have different opinions as to the single dose of an antibiotic goes to the weight of Dr. Akmal's testimony, not his qualifications or competency to testify.

Dr. Akmal testified that he has never performed a TRUS biopsy or practiced urology. (Doc. No. 87-1 at 6). He personally watched a prostate biopsy being done one time in medical school, (*Id*. at 6-7) but stated that actually performing the biopsy is "out of my league." (*Id*. at 7). "That belongs to the urologist." (*Id.*) He said that he is "the gatekeeper before the patient gets to the urologist." (*Id.*). He stated that he could inject an antibiotic prior to the time the biopsy is performed and "[m]ost of the time a primary care doctor is able to provide antibiotic coverage prior to the procedure." (*Id*. at 8). But he has never physically prepped a TRUS biopsy patient for the urologist in the hour or two hours before the TRUS biopsy. (*Id*. at 9). He stated: "we normally treat the patient with appropriate antibiotic therapy cultures, so forth, prior to them getting to the urologist." He answered "yes" to the question "So you give the antibiotics for the TRUS biopsy?" and stated, "A lot of times, yes, we can – as an inpatient physician, we initiate – treatment." (*Id*. at 10).[29]

Plaintiff argues that Dr. Akmal, who is a former staff physician at the NVAH and who was engaged in a clinical practice in Tennessee in the year preceding May 2015, is familiar with the standard of acceptable practice in relation to the VA physicians who treated Plaintiff for his diabetic conditions, particularly in the context of the decision to perform a high-risk, TRUS biopsy on a diabetic patient. (Doc. No. 108 at 4-5). Dr. Akmal testified about the need to resolve all doubts about antibiotic treatment on the side of caution with a known diabetic patient, considered immune-suppressed, by administering antibiotics in the days preceding and following the TRUS biopsy. (*Id*. at 6). He stated there was no good reason for the VA not to have ordered a strong pre-procedure regimen of antibiotics and a similarly strong regimen in the days after the procedure. (*Id*.)

---

[29] Neither party has filed any additional pages of Dr. Akmal's deposition, so the Court is admittedly viewing these statements out of context and as part of an incomplete picture. The burden to provide the Court with evidence to support their positions is upon the parties, however, not the Court.

As noted, Plaintiff has stated that the central issue in the case is not the actual biopsy procedure itself, but whether Mr. West received a proper antibiotic regimen in preparation for that biopsy. Plaintiff argues that resolution of that antibiotic issue requires consideration of a patient's individual, overall medical condition; in this case, advanced diabetes, which is not, standing alone, a "urological" medical issue. (*Id.*) And Plaintiff is, as they say, the master of his complaint. *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 312 (6th Cir. 2009). As long as his pleaded claims survive, he is allowed to pursue them under his particular selected theory.

The Court finds that Plaintiff has sufficiently shown, for purposes of Tenn. Code Ann. § 29-26-115 and Fed. R. Evid. 702, that Dr. Akmal is qualified[30] and competent to testify about the issue Plaintiff has put at the center of this case: the proper administration of antibiotics and pre-procedure preparation for Plaintiff, and his testimony is relevant to those issues. For these reasons, Defendant's motion to exclude Dr. Akmal will be denied.

B. Dr. Capelouto

Dr. Carl Capelouto is a board-certified urological surgeon in Atlanta, Georgia, where he has practiced since November 1996. He was actively engaged in a clinical practice of urological surgery for one full year preceding the date of his Declaration and also for one full year preceding May 18, 2015. (Doc. No. 47-2 at 1). His Declaration states that he possesses knowledge about Nashville, "including a basic understanding of its metropolitan population of approximately 2,000,000, including contiguous counties, as well as the medical universities, teaching and otherwise, in proximity to the Nashville medical community." (*Id.* at 4). He asserts that he "may

---

[30] To the extent Defendant is attempting to challenge Dr. Akmal's testimony concerning the standard of care as not assisting the trier of fact to understand the evidence or to determine a fact in issue as required by Fed. R. Evid. 702, the Court finds that Dr. Akmal's testimony sufficiently meets the Rule 702 standard.

favorably compare the medical resources available in the Atlanta, Georgia area" where he practices "with those in the Nashville medical community." (*Id.*). "They are materially identical, particularly as it relates to the very narrow medical issue described in this declaration." (*Id.*). Thus, Dr. Capelouto asserts a familiarity with the Nashville medical community allegedly sufficient to opine that it is similar to the medical community in which he practices in and near Atlanta.

Defendant challenges both Dr. Capelouto's familiarity with the Nashville medical community and the "similarity" Dr. Capelouto attributes to the Atlanta and Nashville medical communities. Thus, Defendant is challenging Dr. Capelouto's qualifications to testify about the relevant medical community or a "similar" medical community under Tenn. Code Ann. § 29-26-115(a).

As noted above, the familiarity requirement and the similarity requirement are separate, alternative approaches to proving the acceptable standard of care. *See McDaniel*, 2018 WL 795506, at *5. Experts may use two approaches to demonstrate that they meet the locality rule. Under the first approach, experts demonstrate that they are familiar with the pertinent standard of care by showing that they are familiar with the medical community in which the allegedly negligent provider practiced at the time of the injury. *Id.* at *4. Under the second approach, experts must show (1) familiarity with a medical community and (2) that the community is similar to the one connected to the case. *Id.* Thus, an expert witness may show that he is "familiar" with the relevant medical community or that he is familiar with a "similar" medical community. In this case, Dr. Capelouto takes the second approach, asserting that he is familiar with a "similar" medical community, and the Court analyzes his testimony under this second approach.

The statute does not require a particular means or manner of proving what constitutes a "similar community" or define that term. *Shipley*, 350 S.W.3d at 552. The undersigned previously

has noted the inherently subjective, non-factual nature of a determination that two items are "similar" (as opposed to "the same"/identical, or "different").[31] So he approaches this issue with a healthy understanding that he would be hard-pressed to declare that he has the sole "right" answer here; the best he can do is call it like he sees it, making the soundest decisions he knows how to make in considering what the statute meant by "similar" and applying it herein accordingly.

In attacking Dr. Capelouto's familiarity with the Nashville medical community, Defendant argues, among other things, that at his deposition,[32] Dr. Capelouto did not know the number of beds in the Vanderbilt medical system and had not practiced, taught, or done a residency in Nashville. (Doc. No. 87-2 at 5). Dr. Capelouto testified that his daughter went to Baptist Hospital when she lived in Nashville and he had been in that hospital and walked around. (*Id.* at 6 and 9). He also stated that his daughter had shoulder surgery at Vanderbilt Medical Center. (*Id.* at 6).

Dr. Capelouto stated that he has talked to many doctors in Nashville over the years, but not about this specific case. (Doc. No. 87-2 at 6). He asserted that the two medical communities were materially identical because there is a large academic, medical center with a huge medical staff in each community, there are several excellent suburban and community hospitals, and there is a

---

[31]   As the undersigned previously has noted about "similarity" and related concepts:

The difficulty here is that asking whether two things are "the same" is never a factual inquiry, capable of scientific, conclusive resolution. It cannot be determined, as a matter of concrete fact, that two items are or are not the same. Rather, a subtle, inscrutable continuum runs from "different," through "similar," to "same." Thus, resolving this inquiry involves a subjective judgment call as to whether two items are sufficiently close to the "same" end of that continuum that they should be labeled "the same". In short, sameness is in the eye of the beholder; what one person considers "the same" might not be "the same" to someone else.

Eli J. Richardson, *Taking Issue with Issue Preclusion: Reinventing Collateral Estoppel*, 65 Miss. L.J. 41, 70 (1995).

[32] Again, only a few pages of Dr. Capelouto's deposition have been filed with the Court, so there is no context for the questions and answers given.

large, private, urology group in both places, a "solid group of urologists, a solid urology community." (*Id.* at 6-8). He stated that, although he had not trained Nashville urologists, he knew that they are generally well-trained, similarly (there's that ambiguous word again) trained, and have similar practice patterns to urologists in Atlanta because they are all similarly trained and working in an academic hospital in a large metropolitan area. (*Id*). Dr. Capelouto testified that he knew about a specific urology practice at Vanderbilt by reputation, not from first-hand experience. (*Id*. at 10). He testified that he had been to meetings with these Nashville urologists and to meetings where one of the Nashville urologists spoke. (*Id*. at 8).

As noted above, an expert may become familiar with the relevant medical community qualified under Tenn. Code Ann. § 29-26-115(a)(1) by means such as educating himself through reading reference materials on pertinent statistical information such as community and/or hospital size and the number and type of medical facilities in the area, conversing with other medical providers in the pertinent community or a neighboring or similar one, or visiting the community or hospital where the defendant practices. *Shipley,* 350 S.W.3d at 552. When analyzing whether two medical communities are similar, courts assess the expert's knowledge of "pertinent statistical information such as community size, hospital size, the number and type of medical facilities in the community, and medical services or specialized practices available in the area." *McDaniel*, 2018 WL 795506, at *5. This information substitutes for knowledge of the standard of care in the pertinent medical community. *Id.* "In other words, if experts know the standard of care in community A, but not in community B, then their knowledge that the two communities share similar demographics and statistics equips them to opine on how community B has the same standard of care as community A." *Id.* Thus, in *McDaniel*, the court treated the expert's knowledge

of statistical information as relevant to determining the similarity between the community where the defendant practiced and the community where the expert practiced. *Id.*

Dr. Capelouto explained certain demographic information about the Nashville medical community[33] and stated that he had conversed with urologists from Nashville. He also testified that he had visited [the former] Baptist Hospital and Vanderbilt Medical Center in connection with his daughter's treatment there. The Court finds that Dr. Capelouto has sufficiently shown that, for purposes of his testimony, he is familiar enough with the relevant medical community here in Nashville to state that it is similar to the medical community in which he practices (and was practicing in 2015) in Atlanta and to state an opinion based thereon.

C. Conclusion

Defendant's Motion to Exclude Plaintiff's Experts (Doc. No. 84) will be denied.

CONCLUSION

For the reasons explained herein, Plaintiff's Motion to Strike Defendant's Expert Disclosures and Exclude Testimony (Doc. No. 40) will be granted in part and denied in part, and Defendant's Motion to Exclude Plaintiff's Experts (Doc. No. 84) will be denied. An appropriate Order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[33] Dr. Capelouto stated in his Declaration that he was provided information by Plaintiff's counsel, Mr. Burger. The Court assumes that information was statistical information about the Nashville medical community, but Dr. Capelouto did not specifically identify what that information was. (Doc. No. 47-2 at 4).