IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| RAY DEAN WEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:17-cv-00368 |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Pending before the Court are Defendant's Motion for Judgment on the Pleadings (Doc. No. 41), Plaintiff's Motion for Summary Judgment (Doc. No. 78), and Defendant's Motion for Summary Judgment (Doc. No. 89). The parties have filed, respectively, responses and replies to these motions.

## BACKGROUND

This action was brought against the United States, pursuant to the Federal Torts Claims Act ("FTCA"), for alleged medical malpractice occurring at the Nashville Veterans Administration Hospital ("NVAH"). The background is described more specifically in the Court's Memorandum Opinion on the parties' cross-motions to exclude experts, filed contemporaneously herewith. The Court will describe additional facts as needed throughout this opinion.

In summary, Plaintiff underwent a transrectal ultrasound biopsy ("TRUS biopsy") at the NVAH in May of 2015. Plaintiff alleges claims against Defendant, pursuant to Tennessee's HealthCare Liability Act ("THLA"), for violations of the acceptable standard of professional practice by the physicians at the NVAH based on their failure to prescribe prophylactic antibiotics

before or after the TRUS biopsy. Plaintiff alleges that Defendant violated the acceptable standard of care in several ways, including the failure of the physicians at NVAH properly to consider Plaintiff's other medical issues at the time, including a cardiac condition and advanced diabetes that caused him to be immuno-suppressed or immune-compromised; their failure to consider an alternative procedure in light of those pre-existing medical conditions; and their failure to perform a rectal swab to check for particular bacteria in his colon prior to the procedure.[1]

Pending are three dispositive motions, namely, Defendant's Motion for Judgment on the Pleadings and Motion for Summary Judgment, and Plaintiff's Motion for Summary Judgment. The Court will address each motion in turn.

## MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant argues that it is entitled to judgment on the pleadings because Dr. Muhammed Akmal, who signed the certificate of good faith filed by Plaintiff (Doc. No. 2) as a prerequisite to bringing a claim under the THLA, is not competent or qualified to support the required certificate.[2]

A. Standard of review

The Federal Rules of Civil Procedure provide that after the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). "Rule 12(c) may be employed as a vehicle for raising several of the defenses enumerated in Rule 12(b), including the defense of failure to state a claim upon which relief may be granted." *Hasting v. First Cmty. Mortg.*, No. 3:17-cv-00989, 2018 WL 5808727, at *1 (M.D. Tenn. Nov. 6, 2018) (quoting *Amersbach v. City of Cleveland*, 598 F.2d 1033, 1038 (6th Cir. 1979)).

---

[1] Plaintiff has also raised an informed consent issue, although it is not set forth in the Complaint.

[2] Defendant's other argument, that Dr. Akmal was an employee of the Veterans Administration (and thus statutorily prohibited from submitting an opinion in this case), has been withdrawn. (Doc. No. 70).

2

When a defense is raised via a motion for judgment on the pleadings, the district court evaluates the motion using the same standard as is used for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Hasting*, 2018 WL 5808727, at *2; *Kinney v. Mohr*, No. 2:13-cv-1229, 2017 WL 1395623, at *4 (S.D. Ohio Apr. 19, 2017). Where a motion is (or is properly considered as) one for judgment on the pleadings under Rule 12(c), it should be evaluated using the standards for dismissal under Rule 12(b)(6). *Id.* (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 n.1 (6th Cir. 1988)). Thus, the same rules that apply to judging the sufficiency of the pleadings under Rule 12(b)(6) apply to a Rule 12(c) motion. *Id.* Indeed, when a Rule 12(c) motion is based on an asserted failure to state a claim upon which relief can be granted, "'[t]he only difference between Rule 12(c) and Rule 12(b)(6) is the timing of the motion to dismiss.'" *Id.* (quoting *Hunter v. Ohio Veterans Home*, 272 F. Supp. 2d 692, 694 (N.D. Ohio 2003)).

B. Tennessee Healthcare Liability Act

Because the extent of the United States' liability under the FTCA is determined by reference to state law, *Brown v. United States*, 583 F.3d 916, 919-20 (6th Cir. 2009), "federal law incorporates state substantive law for the purposes of FTCA claims." *Brusch v. United States*, No. 19-cv-00415, 2019 WL 5261105, at *2 (M.D. Tenn. Oct. 17, 2019) (quoting *Eiswert v. United States*, 322 F. Supp. 3d 864, 877 (E.D. Tenn. 2018)). Accordingly, on this FTCA claim, the Court must apply Tennessee substantive law (specifically, the THLA). *Eiswert,* 322 F. Supp. 3d at 875. The THLA's pre-suit notice and certification requirements are substantive, not procedural, state law. *Brusch,* 2019 WL 5261105, at *2.

Under the THLA,[3] the claimant must prove three elements:

---

[3] Tenn. Code Ann. § 29-26-101, *et seq.*

(1) the recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred; (2) that the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with that standard; and (3) as a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115(a). The claimant has the burden of proving these elements "by evidence as provided in subsection (b) [Tenn. Code Ann. § 29-26-115(b)]." Tenn. Code Ann. § 29-26-115(a). Although this language could certainly be clearer, it has been interpreted to mean that expert testimony is necessary to establish these elements, and that the expert testimony must meet subsection (b)'s prerequisites for expert testimony. *Young v. Frist Cardiology, PLLC,* 599 S.W.3d 568, 571-72 (Tenn. 2020); *Hurst by Hurst v. Dougherty*, 800 S.W.2d 183, 185 (Tenn. Ct. App. 1990) ("A plaintiff is required to prove [these elements] by expert testimony."). Those requirements are that the expert witness:

[first,] was licensed to practice in [Tennessee] or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and [second,] had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred.

Tenn. Code Ann. § 29-26-115(b). These requirements are technically considered *competency* requirements, not required *qualifications*. *See, e.g., Shipley v. Williams*, 350 S.W.3d 527, 550 (Tenn. 2011) (noting that subsection (b) prescribes who is "competent" to testify to satisfy the requirements of subsection (a)).

The THLA also requires:

(a) In any health care liability action in which expert testimony is required by § 29-26-115, the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint. If the certificate is not filed with the complaint, the complaint shall be dismissed, as provided in subsection (c), absent a showing that the failure was due to the failure of the provider to timely provide copies of the claimant's records

4

requested as provided in § 29-26-121 or demonstrated extraordinary cause. The certificate of good faith shall state that:

(1) The plaintiff or plaintiff's counsel has consulted with one (1) or more experts who have provided a signed written statement confirming that upon information and belief they:

> (A) Are competent under § 29-26-115 to express an opinion or opinions in the case; and

> (B) Believe, based on the information available from the medical records concerning the care and treatment of the plaintiff for the incident or incidents at issue, that there is a good faith basis to maintain the action consistent with the requirements of § 29-26-115; or

(2) The plaintiff or plaintiff's counsel has consulted with one (1) or more experts who have provided a signed written statement confirming that upon information and belief they:

> (A) Are competent under § 29-26-115 to express an opinion or opinions in the case; and

> (B) Believe, based on the information available from the medical records reviewed concerning the care and treatment of the plaintiff for the incident or incidents at issue and, as appropriate, information from the plaintiff or others with knowledge of the incident or incidents at issue, that there are facts material to the resolution of the case that cannot be reasonably ascertained from the medical records or information reasonably available to the plaintiff or plaintiff's counsel; and that, despite the absence of this information, there is a good faith basis for maintaining the action as to each defendant consistent with the requirements of § 29-26-115. Refusal of the defendant to release the medical records in a timely fashion or where it is impossible for the plaintiff to obtain the medical records shall waive the requirement that the expert review the medical record prior to expert certification.

Tenn. Code Ann. § 29-26-122. Thus, the expert providing the signed written statement confirming the good-faith basis to maintain the action under the THLA must be "competent" under Tenn. Code Ann. § 29-26-115 to express his opinions in the case.

5

The failure of a plaintiff to file a certificate of good faith in compliance with this section shall, upon motion, make the action subject to dismissal with prejudice. Tenn. Code Ann. § 29-26-122(c).

C. <u>Dr. Akmal</u>

Plaintiff's Complaint in this case is supported by a certificate of good faith and the Affidavit of Dr. Muhammad Akmal. (Doc. No. 2). Dr. Akmal is a physician licensed in Tennessee and Georgia and board-certified in internal medicine. (Doc. No. 47-1). He has practiced medicine in the Middle Tennessee medical community (including Murfreesboro and Nashville) for the past twenty years. He has held staff privileges at St. Thomas Rutherford Hospital in Murfreesboro and the NVAH. (Doc. No. 47-1 at 1). He is not a urologist and does not perform TRUS biopsy procedures (Doc. No. 87-1 at 6-7), but the Court has found him to be qualified and competent to testify about general internal medicine matters related to the antibiotic issue in this case. His testimony was also the subject of Defendant's Motion to Exclude Plaintiff's Experts (Doc. No. 84), which the Court has denied.

D. <u>The parties' respective contentions</u>

As it did in its Motion to Exclude Plaintiff's Experts, Defendant claims that Dr. Akmal has no relevant experience that would render him competent to provide the certificate of good faith or to testify as an expert in this case. Defendant maintains that the issue in this medical malpractice case is a urological issue and a physician, such as Dr. Akmal, who practices internal medicine, is not competent to testify as to the standard of care for a urologist. Therefore, Defendant argues, Plaintiff has not properly supported its certificate of good faith in this case, and the case should be dismissed.

Plaintiff, on the other hand, insists that the issue in this case is not a urological surgical issue but a general, medical, diabetes management issue, not limited to the conduct of the urologist, and that Dr. Akmal is competent and qualified to testify as to that issue and to support the certificate of good faith.[4]

E. Analysis

The Court finds that Dr. Akmal's competency and qualifications are sufficient to support Plaintiff's certificate of good faith in this case. For the same reasons the Court denied Defendant's motion to exclude Dr. Akmal, it believes that Dr. Akmal is competent to testify concerning the VA physicians' pre and post-procedure antibiotic treatment, or lack thereof, in relation to Plaintiff's May 2015 TRUS biopsy. Dr. Akmal's opinions have to do with the appropriate evaluation of risks and the provision of antibiotics to an "advanced immune-suppressed diabetic" patient before and after such a procedure in order to protect that patient from the types of infection that ultimately resulted in this case. Plaintiff has sufficiently shown that Dr. Akmal is competent as to this internal medicine issue for purposes of the certificate of good faith. Accordingly, Defendant's Motion for Judgment on the Pleadings will be denied.

---

[4] As explained more fully in the Court's Memorandum Opinion regarding the expert witnesses in this case, Plaintiff admits that the technical performance of the very brief urological needle biopsy was appropriate. (Doc. No. 47 at 8). It is the pre-procedure evaluation and treatment of "a highly susceptible, immune-compromised diabetic" that Plaintiff and Dr. Akmal challenge. (*Id.*) It is the failure by the entire team of VA physicians, not solely Dr. Fiscus, the urologist and surgeon, to "properly evaluate an advanced diabetic's immune-suppressed condition" that Plaintiff and Dr. Akmal claim breached the applicable standard of care. (*Id.* at 9). Thus, Plaintiff argues, Dr. Akmal need not be a urologist to be qualified and competent to offer the relevant medical testimony and support the required certificate of good faith.

7

<u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

 A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). In other words, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 628.

8

A party asserting that a fact cannot be or genuinely is disputed—i.e., a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). On a motion for summary judgment, a party may object that the supporting materials specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Upon such an objection, the proponent of the supporting material must show that the material is admissible as presented or explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018); *Mangum v. Repp*, 674 F. App'x 531, 536-37 (6th Cir. 2017) (citing Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

The court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." *New Century Found. v. Robertson*, 400 F. Supp. 3d 684, 689 (M.D. Tenn. 2019) (citing *Ferro Corp. v. Cookson Group, PLC*, 585 F.3d 946, 949 (6th Cir. 2009). "[S]ummary judgment in favor of either party is not

9

proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

<u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>
("Plaintiff's Motion")

Plaintiff asks the Court to find that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law as to Defendant's liability in this case. Plaintiff argues that he has provided competent medical expert support for his claim that the physicians at NVAH failed to follow the appropriate antibiotic protocol in connection with the TRUS biopsy performed on Plaintiff on May 18, 2015, resulting in severe sepsis that "ravaged" Plaintiff's body and necessitated the removal of his left testicle. Plaintiff further contends that, as explained in Plaintiff's motion to exclude Defendant's experts, Defendant has failed to offer any competent expert testimony to the contrary—and thus cannot raise a genuine issue of material fact regarding any of those elements.[5]

Defendant responds, as it did in response to Plaintiff's motion to exclude Defendant's experts, that two of its experts, Drs. Fiscus and Keegan, are being offered not as expert witnesses, but rather as fact witnesses. Defendant also argues again that its retained expert, Dr. Smith, satisfies every foundational requirement to provide expert testimony in this case.

---

[5] Defendant is the non-movant, of course, as to Plaintiff's Motion. Accordingly, consistent with the above discussion of summary judgment standards, Defendant here has no burden to raise a genuine issue of material fact unless Plaintiff first meets his initial burden of pointing to evidence indicating the lack of a genuine issue as to each of the three elements of his claim. As noted below, however, Plaintiff does meet his initial burden.

Case 3:17-cv-00368   Document 131   Filed 11/24/20   Page 10 of 24 PageID #: 2306

As indicated above, under the THLA, a claimant must prove three elements: (1) the recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred; (2) that the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with that standard; and (3) as a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred. Tenn. Code Ann. § 29-26-115(a). And as further explained above, these elements must be proved by "competent" expert testimony.[6]

In ruling on Plaintiff's Motion to Exclude Experts, the Court held that Drs. Keegan and Smith may not testify in this matter. Dr. Fiscus may testify as to the facts surrounding Plaintiff's TRUS biopsy procedure. In other words, the opinions of Dr. Akmal and Dr. Capelouto are unchallenged by competent, qualified expert testimony in this matter.

The Court has found that Dr. Akmal is qualified and competent—that is, meets the standards of Tenn. Code Ann. § 29-26-115(a) and (b) and Fed. R. Evid. 702—for purposes of providing (relevant) expert testimony as to the issue Plaintiff has put at the center of this case: the proper administration of antibiotics and pre-procedure preparation for Plaintiff. The Court has also found that Dr. Capelouto, a urologist, has sufficiently shown, for purposes of satisfying the

---

[6] As noted above, subsection (b) sets forth the requirements for an expert witness to be competent to testify in a medical negligence case. For ease of reference when reading the relevant text of subsection (b) itself, the Court broke it down into two requirements, but the first requirement can be broken down into two requirements. So one may conceive of three requirements for an expert to be competent: (1) being licensed to practice in Tennessee or a contiguous bordering state (2) a "profession or specialty which would make the person's expert testimony relevant to the issues in the case," and (3) having "practiced this profession or specialty in one . . of these states during the year preceding the date that the alleged injury or wrongful act occurred." Tenn. Code Ann. §29-26-115(b).

requirements of Tenn. Code Ann. § 29-26-115(a)(1), that he is familiar enough with the relevant medical community here in Nashville to state that it is similar to the medical community in which he practices in Atlanta and to state an opinion based thereon. Each of these physicians testified that Defendant's physicians breached the applicable standard of care in dealing with Plaintiff's pre- and post-procedure antibiotic treatment related to his May 2015 TRUS biopsy. (Doc. No. 47-1 at 8-9; Doc. No. 47-2 at 5-6).

Dr. Capelouto testified that, as a rule, one gram of Rocephin prior to a biopsy, "with caveats of when it was given," is appropriate. (Doc. No. 101-8 at 13). He opined that if given as the only prophylaxis, Rocephin is appropriate "if it is given within a certain amount of time before the biopsy." (*Id.*) He testified that the dose of Rocephin should be given "at least one hour" before the TRUS biopsy. (Doc. No. 103-2 at 3). He stated: "if you're going to give a single dose . . .it needs to be given within a certain amount of time to make sure it's been able to be distributed into the tissues." (*Id.*) Here, it is undisputed that Plaintiff received as a prophylaxis only one gram of Rocephin and that it was not given more than one hour prior to the biopsy.

Dr. Akmal opined that with a known diabetic patient who is considered immune-suppressed, the VA doctors should have administered antibiotics in the days preceding and following the subject biopsy. (Doc. No. 47-1 at 6). "That insures that the antibiotic is fully present in the patient's blood stream and minimizes (although it certainly does not guarantee) the development of any severe infection." (*Id.*). And it is undisputed that Plaintiff was not provided any such advance administration of antibiotics. Dr. Akmal also testified that although there are differences of opinion as to the length of time pre- and post-procedure antibiotics should be given to a patient like Plaintiff, it is not reasonable to omit all prophylaxis antibiotic treatment except for the minimal, single injection (of one gram of Rocephin) that was given to Plaintiff. (*Id.* at 7-8).

12

Turning to the final element, proximate causation of an injury, it is undisputed that Plaintiff suffered an infection, and that the infection caused pain and caused Plaintiff to be hospitalized. This suffices to remove any genuine issue as to the existence of an injury. That leaves only the requirement that Defendant's negligent acts and omissions proximately caused such injury. On that topic, Dr. Akmal testified that "it is probable that a proper pre-procedure prophylactic antibiotic regimen would have spared [Plaintiff] painful infection management efforts described in his medical chart, culminating in the removal of his badly abscessed testicle one month after the procedure." (Doc. No. 47-1 at 8-9).[7] He stated that reliable and authoritative medical literature "strongly suggests that any infection which may have developed would have been minimal and relatively easy to manage, if pre-procedure and post-procedure antibiotic regimens had been properly focused and administered." *Id.* at 9. Dr. Capelouto testified that it is "likely" or "more probable than not" that the infection and sepsis resulted from the breach of the applicable standard of professional practice by Defendant's failure to administer and chart an appropriate antibiotic dosage. (Doc. No. 47-2 at 5).

Thus, Plaintiff has carried his burden, as movant, to show, by qualified and competent medical testimony, the relevant standard of care in the Nashville medical community, Defendant's alleged breach of that standard of care, and that the alleged breach caused Plaintiff an injury, *i.e.,* a resulting serious infection that caused severe pain and resulting hospitalizations.[8] The burden,

---

[7] "The development and progression of infection is admittedly a highly individualized consideration, so the foregoing conclusion may not be expressed with absolute certainty." (Doc. No. 47-1 at 9).

[8] Although Defendant does not dispute that Plaintiff suffered an infection as result of the subject biopsy, it does dispute the nature of Plaintiff's resulting injuries.

therefore, shifts to Defendant, as non-movant, to show that there are genuine issues of material fact as to Plaintiff's THLA claim. Defendant attempts to meet its burden through the testimony of its "fact" witness, Dr. Keegan, and its expert witness, Dr. Smith; but Plaintiff essentially objects that their testimony "cannot be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2), for the reasons stated in Plaintiff's Motion to Exclude Defendant's Experts. Defendant's response to Plaintiff's Motion is almost entirely a defense of its own medical experts. That issue has been considered and ruled on in the Court's contemporaneous Memorandum Opinion and Order concerning the expert witnesses, and the testimony of Drs. Keegan and Smith has been excluded.

Although Plaintiff asserts that he is entitled to summary judgment on the issue of liability in general ("summary judgment should be granted on the issue of Defendant's liability for the medical harm caused to Plaintiff"),[9] Defendant identifies certain alternative theories underlying Plaintiff's malpractice claim on which it asserts that Plaintiff is not entitled to summary judgment: (a) that Plaintiff failed to give appropriate and timely antibiotics in connection with the subject biopsy; (b) that Plaintiff never gave informed consent; and (c) that Plaintiff should have received, but did not receive, a rectal swab prior to the biopsy. The Court will address these theories in turn.

With regard to the issue of the timing and/or appropriateness of the antibiotic administration, Defendant argues that the parties "agree" the standard of care was met. (Doc. No. 103 at 11). But in fact the parties do *not* agree that the standard of care *at issue* was met. As explained above, both of Plaintiff's expert witnesses testified that the VA physicians breached the applicable standard of care *with regard to the provision, or lack thereof, of appropriate and timely antibiotics* to Plaintiff in May 2015. And, as indicated, Defendant has not presented competent,

---

[9] Doc. No. 78 at 26.

qualified expert testimony to show a genuine issue of material fact or refute Plaintiff's expert testimony on this issue.

Therefore, the Court concludes that Plaintiff has shown entitlement to judgment as to liability on his THLA claim on the specific theory that Defendant failed to provide appropriate and timely antibiotics to Plaintiff in connection with the subject biopsy, finding that there is no genuine issue of material fact as to whether Defendant breached the standard of care in this particular respect. The question then becomes what precise relief the Court should grant Plaintiff based on this conclusion.

Rule 56(g) provides that if the court does not grant all the relief requested by the motion, it may enter an order stating any material fact— including an item of damage or other relief—that is not genuinely in dispute and treating the fact as established in the case. Fed R. Civ. P. 56(g).; *see also Weems v. Metro. Gov't of Nashville & Davidson Cty.*, No. 3:17-cv-01072, 2018 WL 6341826, at *6 (M.D. Tenn. Dec. 4, 2018); *McKibbens v. Metro. Gov't of Nashville & Davidson Cty.*, No. 3:17-cv-01110, 2018 WL 6696990, at *11 (M.D. Tenn. Dec. 20, 2018).

This is a case where Plaintiff brings what is styled as a single claim (of medical malpractice) based on several different theories. The Court has found that Plaintiff is entitled to summary judgment as to liability on one of those theories but, as discussed below, not the others. In such a case, the Court believes that clarity is enhanced by the Court specifying, via a Rule 56(g) order, the theory on which Plaintiff is entitled to judgment as a matter of law. For purposes of a potential trial and a potential appeal, this approach has advantages (which the Court will forgo detailing here) over the tack of merely entering summary judgment as to liability. And Rule 56(g) is implicated because Plaintiff asked the Court to grant it summary judgment based on multiple theories, while the Court will (as discussed below) decline to award it based on more than the one

15

theory discussed thus far. Accordingly, the Court will enter an Order in Plaintiff's favor, under Fed. R. Civ. P. 56(g), finding that Defendant is liable on Plaintiff's THLA claim based on the theory that Defendant failed to provide appropriate and timely antibiotics to Plaintiff in connection with the subject biopsy.

That leads to the other two theories. As to the theory of specialized informed consent, Defendant again argues that the parties "agree" that Plaintiff gave proper informed consent. This time, Defendant is on firmer footing. Plaintiff testified that he gave proper informed consent and Plaintiff's expert testified that Plaintiff gave informed consent. This testimony, depending on how it is interpreted, may not be conclusive.[10] But by pointing to this testimony, Defendant at least has raised a genuine issue of material fact as to this theory. Thus, Plaintiff is not entitled to entry of a Rule 56(g) order as to liability with regard to his malpractice theory concerning informed consent.

Defendant has also raised a genuine issue of material fact as to Plaintiff's final theory, *i.e.,* that he needed but did not receive a rectal swab prior to the subject biopsy. Even though Dr. Akmal testified that Defendant breached the acceptable standard of care by failing to conduct a "simple intestinal tract evaluation" (Doc. No. 47-1 at ¶ 10), Dr. Capelouto, Plaintiff's urological expert, testified that it would not, in his opinion, constitute a breach of the standard of care to perform the TRUS biopsy without a rectal swab. (Doc. No. 47-2 at ¶ 8). Therefore, Plaintiff is not entitled to entry of a Rule 56(g) Order as to liability on his theory concerning the rectal swab.

Finally, Defendant asserts that Plaintiff has provided no evidence of damages traceable to the infection that undisputedly followed the subject biopsy. But Plaintiff did not move for summary judgment as to damages, *i.e.*, for summary judgment as to a particular type or in a particular amount

---

[10] The Court further discusses this issue below, in connection with Defendant's Motion for Summary Judgment.

of damages; rather, he moved for summary judgment as to liability only. To establish entitlement to summary judgment as to *liability*, Plaintiff need show only a cognizable *injury*, and not damages (and certainly not damages in a particular amount). As noted above, Plaintiff has made that showing. The Court will address Defendant's argument concerning damages in connection with Defendant's Motion below.

For all these reasons, Plaintiff's Motion will be denied on the basis that he at least arguably did not receive all of the relief he requested, *i.e.*, a finding of liability on all of his theories. Nonetheless, Plaintiff is entitled to entry of a Rule 56(g) order—appropriate in cases where a movant is entitled to some but not all of the relief it seeks—in his favor as to liability on his theory that Defendant breached the acceptable standard of care with regard to the administration of antibiotics to Plaintiff in connection with his May 2015 TRUS biopsy. Plaintiff is not entitled to such a Rule 56(g) order with regard to his theories based upon lack of informed consent or the need for a rectal swab.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
### ("Defendant's Motion")

Defendant has moved for summary judgment[11] on the issues of liability and damages, arguing that Plaintiff has offered no proof that the standard of care was violated and, even if he had, he has offered no proof that his complained-of injuries were the "proximate cause" (the Court assumes Defendant means proximate *result*, which is the term used in Tenn. Code Ann. § 29-26-101) of the infection he sustained following the subject biopsy. (Doc. No. 89 at 1). Defendant

---

[11] Defendant specifically states that it is moving for summary judgment "in the event that its contemplated motion to strike Plaintiff's experts is granted." (Doc. No. 92 at 12). That contemplated motion to strike was *not* granted. Nevertheless, despite the purportedly conditional nature of Defendant's Motion and the non-occurrence of the stated condition, the Court has chosen to address Defendant's Motion on the merits.

identifies, as Plaintiff's three theories of medical malpractice by the VA physicians related to the subject biopsy procedure, the following: (a) that Plaintiff failed to give appropriate and timely antibiotics in connection with the subject biopsy; (b) that Plaintiff never gave informed consent; and (c) that Plaintiff should have received, but did not receive, a rectal swab prior to the biopsy.

A. Informed consent

To show a lack of informed consent under the THLA, the plaintiff "shall prove by evidence as required by § 29-26-115(b) that the defendant did not supply appropriate information to the patient in obtaining informed consent (to the procedure out of which plaintiff's claim allegedly arose) in accordance with the recognized standard of acceptable professional practice in the profession and in the specialty, if any, that the defendant practices in the community in which the defendant practices and in similar communities." Tenn. Code Ann. § 29-26-118. The "appropriate information" that must be disclosed depends on the "usual and customary advice given to patients to procure consent in similar situations." *Miller ex rel. Miller v. Dacus*, 231 S.W.3d 903, 907–08 (Tenn. 2007). Typically, the health care provider must "inform the patient of the diagnosis or nature of the patient's ailment, the nature of and reasons for the proposed treatment or procedure, the risks or dangers involved, and the prospects for success." *Id.* The patient must also be informed of alternative methods of treatment, the risks and benefits of such treatment and, if applicable, that the proposed treatment is experimental. *Id.* Whether the information given to the patient is sufficient to satisfy the statutory standard "depends on the nature of the treatment, the extent of the risks involved, and the standard of care." *Id.* (quoting *Cardwell v. Bechtol,* 724 S.W.2d 739, 749 (Tenn.1987)).

A patient must present expert testimony that his or her physician failed to disclose certain information about the risks of the proposed procedure that a reasonable physician would have

provided under similar circumstances. *Ivy v. Bannister*, No. 12-CV-2339-JTF-TMP, 2013 WL 12095136, at \*3 (W.D. Tenn. Sept. 12, 2013). Further, a plaintiff must establish not only the standard of care in the community by expert medical testimony,[12] but also that the defendant violated that standard, and that the violation caused Plaintiff's injury. *Id.* at \*2. In such a case, the issue of causation is based on an objective standard: whether a reasonable person in the patient's position would have consented to the procedure or treatment in question if adequately informed of all significant perils. *Ashe v. Radiation Oncology Assocs.*, 9 S.W.3d 119, 124 (Tenn. 1999), *cited in Kidd v. Dickerson*, No. M2018-01133-COA-R3-CV, 2020 WL 5912808, at \*18 (Tenn. Ct. App. Oct. 5, 2020).

Defendant contends that there is no dispute that Plaintiff gave informed consent for the subject biopsy. Evidence in the record shows that Dr. Catherine Harris explained the informed consent form to Plaintiff, and Plaintiff signed it. (Doc. No. 82-1). The informed consent form lists "infection" as one of the known risks of the procedure and states that there are alternatives to the procedure, including other diagnostic tests. (*Id.*) Plaintiff's Affidavit states: "On the date the procedure was performed, *I was given proper informed consent by the VA doctor.*" (Doc. No. 93-3 at ¶ 6) (emphasis added). Plaintiff admits that he was allowed to ask questions, inasmuch as he states that he and his wife each asked why he would not be given prophylactic antibiotics both before and after the procedure. (*Id.*). In addition, Defendant's Request for Admission No. 5 asked Plaintiff to admit that "Informed consent was obtained prior to the May 18, 2015 procedure, and infection was acknowledged by the Plaintiff as a known risk." (Doc. No. 51-1 at ¶ 5). Plaintiff

---

[12] Such expert proof must be based on the expert's personal knowledge in an area in which he is competent to testify. *Ivy,* 2013 WL 12095136, at \*3  (citing *Mayo v. U.S.*, 785 F. Supp. 2d 692, 696 (M.D. Tenn. 2011)).

responded: "Admitted, but with the caveat that reasonable precautionary measures, consistent with the standard of acceptable professional practice, must be maintained, and informed consent advice does not constitute a waiver or a release for conduct that deviates from the standard of care." (*Id*.)

Plaintiff contends, however, that his "informed consent" was limited to the surgical procedure itself. (Doc. No. 111 at ¶ 77). Plaintiff admits that informed consent was obtained as to the "general procedure form" (*Id*. at ¶ 78), but he argues that it is the preparatory aspects of his treatment, not the surgical procedure itself, that he criticizes as a deviation from the standard of care. (*Id*.). Plaintiff acknowledges that his urological expert, Dr. Capelouto, testified that Plaintiff gave informed consent "in the context of the technical performance of the urological procedure." (*Id.* at ¶ 79). Plaintiff argues that there was no mention at all of the heightened risks to diabetic, immune-suppressed individuals on the consent form. The Court assumes that Plaintiff believes the informed consent form should have included a listing of specific risks for an immune-suppressed, diabetic patient. Plaintiff states that the consent form he signed was "legally inadequate" for a "specialized informed consent" under the standards set forth in *White v. Beeks*, 469 S.W.3d 517 (Tenn. 2015). (Doc. No. 111 at ¶ 72). In *White,* the court held that in cases where the patient has given consent, the inquiry shifts to examining the information underlying the consent and asks "whether the doctor provided *any* or *adequate* information to allow a patient to formulate an intelligent and informed decision when authorizing or consenting to a procedure." *White,* 469 S.W.3d at 526 (citing *Blanchard v. Kellum*, 975 S.W. 2d 522, 524 (Tenn. 1998)).

But Plaintiff has not presented expert testimony or other evidence that the applicable standard of care required a more specialized informed consent than was presented here. In his Affidavit, Dr. Capelouto stated that where any individual-specific enhanced infection factors appear, the physician should chart informed consent regarding alternative regimens and risk versus

20

benefit considerations. (Doc. No. 47-2 at 4). He first stated that he did not identify, from Plaintiff's chart, that range of informed consent. (*Id.*) In his deposition, however, Dr. Capelouto revised that opinion *and identified adequate informed consent by Plaintiff in the record*. (Doc. No. 93-8 at 5-7). Dr. Akmal does not opine about informed consent at all. (Doc. No. 47-1). Therefore, Plaintiff has not presented expert proof, sufficient for purposes of Tenn. Code Ann. §§ 29-26-115, in support of his claim based on lack of informed consent. So Plaintiff has failed to raise a genuine issue of material fact as to this theory, and Defendant is entitled to an order in its favor as to liability under this theory.

For these reasons, the Court will enter an Order in Defendant's favor, pursuant to Fed. R. Civ. P. 56(g), as to liability on the theory of lack of informed consent.[13]

### B. Appropriate administration of antibiotics

Defendant argues that it is entitled to (partial) summary judgment on Plaintiff's theory concerning whether he received an appropriate antibiotic prophylaxis. Defendant maintains that it is undisputed that one gram of Rocephin was administered to Plaintiff prior to the subject biopsy and that even Plaintiff's urological expert agrees that 1 gm of Rocephin prior to the procedure was appropriate.

As indicated above, Dr. Capelouto testified that the dose of Rocephin should be given "at least one hour" before the TRUS biopsy. (Doc. No. 103-2 at 3). He stated: "if you're going to give a single dose . . .it needs to be given within a certain amount of time to make sure it's been able to

---

[13] For the reasons indicated above, the Court prefers this approach to the tack of issuing an order granting partial summary judgment in Defendant's favor, *i.e.*, summary judgment in Defendant's favor as to this theory. The Court is aware that the value to Defendant of this Rule 56(g) order may seem minimal given the grant of a Rule 56(g) order to Plaintiff on a different theory. But without putting any ideas into counsel's heads, the Court can say that such an order indeed could potentially prove valuable to Defendant.

be distributed into the tissues." (*Id.*) Dr. Akmal opined that, with a known diabetic patient who is considered immune-suppressed, the VA doctors should have administered antibiotics in the days preceding and following the subject biopsy and that it is not reasonable to omit all prophylaxis antibiotic treatment except for the minimal, single injection (of one gram of Rocephin) that was given to Plaintiff. (Doc. No. 47-1 at 6--8).

Defendant disagrees with these opinions, but the Court has already found that Plaintiff is entitled to entry of a Rule 56(g) order in his favor on his theory that Defendant's physicians breached the applicable standard of care with regard to the timely[14] and appropriate administration of antibiotics to Plaintiff. For the same reasons, Defendant's Motion as to this theory will be denied.

C. Rectal swab

Defendant asserts that both parties agree that the applicable standard of care did *not* require the medical providers to administer a rectal swab or intestinal tract evaluation to assess whether Plaintiff was at heightened risk for infection, but Plaintiff disagrees. Plaintiff relies upon Dr. Akmal, Plaintiff's expert concerning internal medicine issues related to procedures required to prevent infection, who testified that the VA physicians "breached the acceptable standard of professional care by their failure to conduct a simple intestinal tract evaluation to determine whether Mr. West exhibited signs of the more virulent forms of E. coli." (Doc. No. 47-1 at ¶ 10).

It is true that Dr. Capelouto, Plaintiff's urological expert, testified that it would not, in his opinion, constitute a breach of the standard of care to perform the TRUS biopsy without a rectal swab. (Doc. No. 47-2 at ¶ 8). That contradictory opinion, however, does not change the fact that

_____

[14] Dr. Akmal opines that antibiotics should have been administered for days before and days after the procedure, and Dr. Capelouto opines that antibiotics should have been given at least one hour before the procedure.

Dr. Akmal's testimony is sufficient for Plaintiff to raise a genuine issue of material fact as to this theory. Defendant's motion with regard to the rectal swab theory will be denied.

D. Damages

Finally, Defendant argues that Plaintiff has not presented evidence of causation as to his alleged damages, many of which were pre-existing. Defendant does not dispute that, after the TRUS biopsy on May 18, 2015, Plaintiff developed a serious infection and that, ultimately, Plaintiff had to have his left testicle removed. But Defendant argues that Plaintiff has offered no expert evidence establishing a causal relationship between the alleged medical negligence and his alleged fatigue, shortness of breath, or erectile dysfunction, which were pre-existing conditions.

With regard to damages, Plaintiff has admitted the following: Plaintiff has provided no evidence of economic loss, past or future, resulting from his alleged injuries. (Doc. No. 111 at ¶ 103). Plaintiff has provided no expert evidence establishing a causal relationship between his alleged erectile dysfunction and the alleged medical negligence (*Id.* at ¶ 104), and Plaintiff has provided no expert evidence establishing a causal relationship between his alleged shortness of breath and fatigue and the alleged medical negligence. (*Id.* at ¶ 112).

In light of these admissions, the Court will enter an Order, pursuant to Fed. R. Civ. P. 56(g), in Defendant's favor, as to four elements of Plaintiff's alleged damages: (1) economic loss; (2) erectile dysfunction; (3) shortness of breath; and (4) fatigue. To the extent Defendant attempts to limit Plaintiff's damages to testosterone therapy and a prosthetic testicle (Doc. No. 92 at 21), the Court declines to make that determination. At trial, Plaintiff will be permitted to argue for compensatory damages as alleged in his Complaint,[15] excluding the above four specific elements.

---

[15] Those alleged damages include excruciating, ongoing pain and suffering and diminution in the ability to enjoy life. (Doc. No. 1 at 7).

23

<u>CONCLUSION</u>

For all these reasons, Defendant's Motion for Judgment on the Pleadings (Doc. No. 41) will be denied. Also, Plaintiff's Motion for Summary Judgment (Doc. No. 78) will be denied. However, the Court will enter an Order in Plaintiff's favor, pursuant to Fed. R. Civ. P. 56(g), on the issue of liability for breach of the applicable standard of care as to the administration of antibiotics to Plaintiff in connection with his May 2015 biopsy. Defendant's Motion for Summary Judgment (Doc. No. 89) will also be denied. However, the Court will enter an Order in Defendant's favor, pursuant to Fed. R. Civ. P. 56(g), as to liability on the theory of lack of informed consent and as to the following alleged damages: economic loss, erectile dysfunction, shortness of breath, and fatigue.

An appropriate order shall be entered. In addition, this case will be set for trial by separate order.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

24